

Charles M. Lizza

Phone: (973) 286-6715

Fax: (973) 286-6815

clizza@saul.com

www.saul.com

March 23, 2026

**VIA ECF**

The Honorable André M. Espinosa, U.S.M.J.
United States District Court
Martin Luther King Jr. Fed. Bldg. & U.S. Courthouse
50 Walnut St.
Newark, New Jersey 07102

> Re:    *Axsome Therapeutics, Inc. v. Apotex Inc.*
>        Civil Action No. 25-16038 (MEF)(AME)

Dear Judge Espinosa:

This firm, together with Quinn Emanuel Urquhart & Sullivan, LLP, represents Plaintiff Axsome Therapeutics, Inc. in the above-captioned matter.

Enclosed is the parties' Joint Proposed Discovery Plan.  We look forward to discussing this and any other issues Your Honor wishes to address during the Initial Scheduling Conference on March 26 at 2:30 p.m.

Thank you for Your Honor's kind attention to this matter.

Respectfully yours,

Charles M. Lizza

Enclosure
cc:    All counsel (via email)

One Riverfront Plaza, Suite 1520 ◆ Newark, NJ 07102-5426 ◆ Phone: (973) 286-6700 ◆ Fax: (973) 286-6800

CALIFORNIA  DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  MINNESOTA  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AXSOME THERAPEUTICS, INC.,** | **Civil Action No. 2:25-cv-16038-MEF-AME** |
| **Plaintiff,** | |
| **v.** | **JOINT PROPOSED DISCOVERY PLAN** |
| **APOTEX INC.,** | **Initial Scheduling Conference:** **March 26, 2026 at 2:30 PM** |
| **Defendant.** | **(Filed Electronically)** |

Pursuant to Federal Rules of Civil Procedure 16 and 26(f), Local Civil Rule 26.1(b), and the Court's March 4, 2026 Order (ECF No. 29), Plaintiff Axsome Therapeutics, Inc. ("Axsome" or "Plaintiff") and Defendant Apotex Inc. ("Apotex" or "Defendant") have conferred and submit the following Joint Proposed Discovery Plan.

1

1.      **Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.**

**Joint Response**:

| Attorneys for Plaintiff<br>Axsome Therapeutics, Inc. | Attorneys for Defendant<br>Apotex Inc. |
| --- | --- |
| Charles M. Lizza<br>Sarah A. Sullivan<br>Alexander L. Callo<br>SAUL EWING LLP<br>One Riverfront Plaza, Suite 1520<br>Newark, New Jersey 07102-5426<br>Tel: (973) 286-6700<br>Fax: (973) 286-6800<br>clizza@saul.com<br><br>*Of Counsel:*<br><br>F. Dominic Cerrito<br>Eric C. Stops<br>Catherine T. Mattes<br>Marta A. Godecki<br>Lourania M. Oliver<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>295 Fifth Avenue<br>New York, New York 10016<br>Tel: (212) 849-7000<br>Fax: (212) 849-7100 | Arnold B. Calmann<br>abc@saiber.com<br>Katherine A. Escanlar<br>kescanlar@saiber.com<br>SAIBER LLC<br>7 Giralda Farms, Suite 360<br>Madison, New Jersey 07940<br>973.622.333<br><br>*Of Counsel:*<br><br>Andrew M. Alul (aalul@taftlaw.com)<br>Richard T. Ruzich (rruzich@taftlaw.com)<br>Roshan P. Shrestha, Ph.D.<br>(rshrestha@taftlaw.com)<br>Luke T. Shannon (lshannon@taftlaw.com)<br>TAFT STETTINIUS & HOLLISTER LLP<br>111 East Wacker Drive<br>Suite 2600<br>Chicago, IL 60601<br>Telephone: 312-527-4000 |

2.      **Set forth a brief description of the case, including the causes of action and defenses asserted.**

**Joint Response**:  This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, filed by Plaintiff in response to Defendant's submission of Abbreviated New Drug Application ("ANDA") No. 220803 ("Defendant's ANDA") with the United States Food and Drug Administration ("FDA").

Plaintiff sells the prescription pharmaceutical product Symbravo® (meloxicam and rizatriptan) for the acute treatment of migraine with or without aura in adults.  Symbravo® was approved by the FDA on January 30, 2025.  Through the submission of Defendant's ANDA, Defendant seeks approval from the FDA to commercially market a generic version of Symbravo® before the expiration of United States Patent Nos. 9,821,075, 10,029,010, 10,058,614, 10,137,131, 10,195,278,  10,265,324,  10,363,312,  10,369,224,  10,426,839,  10,463,736,  10,471,014, 10,471,069,  10,512,692,  10,512,693,  10,517,950,  10,532,101,  10,537,642,  10,561,664, 10,583,144,  10,653,777,  10,688,102,  10,688,185,  10,695,429,  10,695,430,  10,702,535,

2

10,702,602, 10,722,583, 10,729,696, 10,729,697, 10,729,773, 10,758,617, 10,758,618, 10,780,165, 10,780,166, 10,799,588, 10,821,181, 10,821,182, 10,894,053, 10,905,693, 10,918,722, 10,933,136, 10,933,137, 10,940,153, 10,987,358, 11,013,805, 11,013,806, 11,020,483, 11,045,549, 11,135,295, 11,207,328, 11,219,626, 11,285,213, 11,331,323, 11,369,684, 11,426,414, 11,471,464, 11,471,465, 11,504,429, 11,510,927, 11,571,428, 11,602,563, 11,607,456, 11,617,755, 11,617,756, 11,617,791, 11,628,173, 11,712,441, 11,738,085, 11,759,522, 11,801,250, 11,806,354, 11,826,370, 11,865,117, 12,128,052, and 12,370,196 (collectively, "the patents-in-suit"), all owned by Plaintiff. The claims of the patents-in-suit cover, *inter alia*, the pharmaceutical composition of Symbravo® and methods of using Symbravo®.

Plaintiff commenced this action following receipt of a notice letter from Defendant dated August 15, 2025, received no earlier than August 18, 2025, in which Defendant stated that it sought to commercially market a generic version of Plaintiff's Symbravo® drug product before the expiration of the patents-in-suit. The FDA cannot approve Defendant's ANDA until at least February 18, 2028 (i.e., 30 months from August 18, 2025).

In this case, Plaintiff asserts that Defendant's ANDA submission constitutes infringement of one or more claims of each of the patents-in-suit. Defendant denies infringement of the patents-in-suit and alleges that the patents-in-suit are invalid.

Defendant has filed a motion pursuant to Fed. R. Civ. P. 12(c) seeking judgment on the pleadings of non-infringement of the following 56 of the 75 patents-in-suit: U.S. Patent Nos. 9,821,075 (Count I), 10,029,010 (Count II), 10,058,614 (Count III), 10,137,131 (Count IV), 10,195,278 (Count V), 10,265,324 (Count VI), 10,363,312 (Count VII), 10,471,014 (Count XI), 10,471,069 (Count XII), 10,512,692 (Count XIII), 10,512,693 (Count XIV), 10,517,950 (Count XV), 10,532,101 (Count XVI), 10,537,642 (Count XVII), 10,561,664 (Count XVIII), 10,583,144 (Count XIX), 10,653,777 (Count XX), 10,688,185 (Count XXII), 10,695,429 (Count XXIII), 10,695,430 (Count XXIV), 10,702,535 (Count XXV), 10,702,602 (Count XXVI), 10,722,583 (Count XXVII), 10,729,696 (Count XXVIII), 10,729,697 (Count XXIX), 10,729,773 (Count XXX), 10,758,617 (Count XXXI), 10,758,618 (Count XXXII), 10,780,165 (Count XXXIII), 10,780,166 (Count XXXIV), 10,799,588 (Count XXXV), 10,821,181 (Count XXXVI), 10,821,182 (Count XXXVII), 10,894,053 (Count XXXVIII), 10,905,693 (Count XXXIX), 10,918,722 (Count XL), 10,933,136 (Count XLI), 10,933,137 (Count XLII) ("'137 patent"), 10,940,153 (Count XLIII), 11,013,805 (Count XLV) ("'805 patent"), 11,013,806 (Count XLVI) ("'806 patent"), 11,020,483 (Count XLVII) ("'483 patent"), 11,045,549 (Count XLVIII), 11,135,295 (Count XLIX) ("'295 patent"), 11,207,328 (Count L), 11,219,626 (Count LI), 11,285,213 (Count LII), 11,426,414 (Count LV), 11,504,429 (Count LVIII), 11,607,456 (Count LXII), 11,617,755 (Count LXIII), 11,617,791 (Count LXV), 11,759,522 (Count LXIX), 11,801,250 (Count LXX), 11,806,354 (Count LXXI), and 12,128,052 (Count LXXIV). Plaintiff intends to oppose Defendant's Rule 12(c) motion and has requested an extension of time to oppose the motion to April 22, 2026.

**3.    Have settlement discussions taken place? Yes _____ No ___X___ .**

(a) What was Plaintiff's last demand?

3

   (1) Monetary demand: $ _____N/A_____
   (2) Non-monetary demand: _____N/A_____

 (b) What was Defendant's last offer?

   (1) Monetary demand: $ _____N/A_____
   (2) Non-monetary demand: _____N/A_____

**4. The parties [have ___X___ have not _____] met pursuant to Fed. R. Civ. P. 26(f).**

**5. The parties [have _____ have not ___X___] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.**

**Joint Response**: The parties' proposed date for exchange of Rule 26(a)(1) disclosures is attached hereto as Exhibit 1.

**6. Explain any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1):**

**Joint Response**: The parties do not anticipate any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1).

**7. The parties [have ___X___ have not _____] conducted discovery other than the above disclosures. If so, describe.**

**Joint Response**: Defendant produced ANDA No. 220803. Otherwise, no discovery has occurred in this litigation.

**8. Proposed joint discovery plan:**

**(a) Discovery is needed on the following subjects:**

**Joint Response**: Discovery relating to the claims and defenses in the parties' pleadings, including infringement and validity of the patents-in-suit, as well as various related issues, claims, and affirmative defenses.

**(b) Discovery [should _____ should not _____] be conducted in phases or be limited to particular issues. Explain.**

**Plaintiff's Position**: Discovery should not be conducted in phases, separate from expert discovery occurring after fact discovery, and Court-ordered patent/claim narrowing is not appropriate.

4

Discovery Should Not Be "Deferred"

Apotex seeks to bifurcate and stay discovery on the patents subject to its Rule 12(c) motion.[1]  Plaintiff opposes this request.  All of the patents-in-suit—both the patents subject to Apotex's motion and the patents that are not subject to the motion—are part of the same family of patents with the same inventor.  It therefore does not make any practical sense to bifurcate discovery because the discovery issues are overlapping and "deferring" discovery would necessarily result in duplication of work.  Further, this Court's Local Patent Rules require the early disclosure of case theories in contentions.  Permitting certain aspects of discovery to proceed without others does not allow for contentions to be properly crystallized.  Incomplete contentions frustrate the purpose of the Local Patent Rules and will undoubtedly result in unnecessary motion practice under Local Patent Rule 3.7, which is burdensome and wasteful for the parties and the Court.

While "[c]ourts have wide discretion to bifurcate issues and claims," "bifurcation is the exception rather than the rule in managing cases." *Lennox Int'l Inc. v. Ethical Prods., Inc.*, No. 21-12437, 2021 WL 5757409, at *2 (D.N.J. Dec. 2, 2021) (citation and internal quotations omitted).  "The party seeking bifurcation bears the burden of demonstrating that judicial economy would be promoted and that no party will be prejudiced by bifurcation." *Id.*  Apotex ignores the Rule 12(c) motion standard that the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party," *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008), and the statutory standard that "[a] patent shall be presumed valid," 35 U.S.C. § 282.  Moreover, in determining whether to bifurcate discovery, "the strengths or weaknesses of a party's legal claims are not among the relevant factors to consider." *Lennox*, 2021 WL 5757409, at *3.

Apotex complains that Axsome has too many patents.  Apotex ignores that this Hatch-Waxman case exists solely because Apotex *chose* to challenge Axsome's patents.  Apotex *chose* to develop its infringing product, knowing that Axsome had patents publicly-listed in the Orange Book.  Apotex *chose* to file Paragraph IV certifications seeking approval to engage in the commercial manufacture, use, or sale of its infringing product *before the expiration* of the Orange Book-listed patents.  And Apotex *chose* to file counterclaims against the patents-in-suit.  Axsome, accordingly, has the right to assert its patents against Apotex.[2]  Every patent contains "a grant to

---

[1] Apotex claims that it is not seeking "bifurcation" or to "stay" any discovery, but instead it "simply requests an order deferring written discovery."  This is semantics.  Apotex can call it whatever it wants, but the practical effect of its request is bifurcation and staying discovery.

[2] Apotex's "patent thicket" argument, which attempts to malign Axsome for protecting its valid patent rights, is (1) irrelevant to the issues of bifurcating discovery and claim narrowing and (2) legally wrong: "[t]he patent laws do not set a cap on the number of patents any one person can hold—in general, or pertaining to a single subject." *Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709, 712 (7th Cir. 2022) (finding that an alleged "patent thicket" consisting of 132 patents covering Humira did not violate the Sherman Act); *see also In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 835 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022) ("[D]efendants' First Amendment right

the patentee . . . of the ***right to exclude others*** from making, using, offering for sale, or selling the invention throughout the United States." 35 U.S.C. § 154. Because Axsome asserted its Orange Book-listed patents against Apotex, and each patent provides a distinct right to exclude competitors from Axsome's claimed inventions, preparing contentions for each of the patents is directly proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the ***importance of the issues at stake in the action***, the amount in controversy, the parties' relative access to relevant information, the parties' resources, ***the importance of the discovery in resolving the issues***, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (emphasis added)). Apotex's attorney argument that it would be "disproportionate" or "inconsistent with Fed. R. Civ. P. 26(b)(1)" to have to serve contentions before resolution of its pending Rule 12(c) motion is without merit or support. Accordingly, Plaintiff respectfully requests that the Court deny Apotex's attempt to evade its discovery and disclosure obligations under the Local Patent Rules and Fed. R. Civ. P. 26(b)(1).[3]

Early Claim Narrowing Is Not Appropriate

Apotex also requests that Plaintiff be "required to reduce the number of asserted claims as follows: To 100 claims by its L. Pat. R. 3.6(b) Disclosure of Asserted Claims; To 50 claims by its L. Pat. R. 3.6(g) Disclosure and Infringement Contentions; To 15 claims at least 30 days before service of opening expert reports; and To 10 claims by the time of the final pretrial order." Defendant's request is unprecedented, premature, inappropriate, and would violate Plaintiff's due process rights. Defendant's request should be denied.

*First*, Defendant's request for early case narrowing is unprecedented in this Judicial District. Defendant has not identified, nor is Plaintiff aware of, ***any*** Hatch-Waxman case in this District where a patent owner has been ordered to limit the number of asserted claims this early in the case, let alone the drastic and arbitrary reduction that Defendant seeks here. To the contrary, when faced with analogous applications, judges in this District have denied the request to limit asserted claims. *See, e.g.*, *Jazz Pharms. Ireland Ltd. v. Lupin, Inc.*, No. 21-14271, D.I. 143 (D.N.J. Mar. 19, 2024) (Allen, M.J.) (refusing to limit number of asserted claims prior to close of expert discovery, because the request was "premature"); *Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197, D.I. 358 (D.N.J. Oct. 24, 2014) (Arleo, M.J.) (denying motion to limit the number of asserted claims); *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, D.I. 262 (D.N.J. Nov. 26, 2013) (Salas, J.) (denying informal request to reduce the number of claims Plaintiff will be asserting at trial before commencement of expert discovery). The single case Defendant cites from this Judicial District is not a Hatch-Waxman case—it is a BPCIA case. Further, the plaintiff in that case did not oppose early case narrowing in principle. *See Amgen Inc. v. Samsung Bioepis Co.*, No. 24-8417 (CPO)(EAP), D.I. 93 at 1-2 (D.N.J. Dec. 19, 2024) (Amended Scheduling Order); *id.*, D.I. 100 at 1-3, App'x A at 3 (D.N.J. Jan. 13, 2025) (Joint Letter on Case Management Order).

---

to petition the government for internally developed patents (and, to a certain degree, for FDA approval) is what protects most of their activity from suit here.").

[3] Axsome reserves the right to seek a commensurate extension of the 30-month stay of approval of Apotex's ANDA if Apotex's motion to stay and bifurcate certain patents is granted.

Consistent with the precedent of this District, and as is customary in Hatch-Waxman cases, the issues narrow organically over time, and the parties can confer after expert discovery to address the number of asserted claims and prior art references for trial.

*Second*, as stated above, this is a Hatch-Waxman case, meaning Apotex invited this suit. Accordingly, Apotex **chose** to engage in this so-called "unprecedented" litigation, and Apotex must litigate the merits of the duly-issued patents against which it chose to certify and file counterclaims.

*Third*, reducing the number of claims that Plaintiff may assert at this time would be premature. Plaintiff is diligently reviewing Defendant's ANDA and intends to assert claims in accordance with the schedule contemplated by the Local Patent Rules. However, Plaintiff does not yet know Defendant's positions, including those that Defendant intends to take in its contentions, during fact discovery, in *Markman*, and in expert discovery. Additionally, neither fact nor expert discovery has yet begun. This discovery is necessary to crystallize specific infringement and validity issues. Plaintiff should not be required to choose which claims it will bring to trial without the opportunity to review Defendant's complete document productions and without a single word from any fact witnesses or experts, especially given that Plaintiff does not yet know Defendant's invalidity and non-infringement theories.

*Fourth*, patent claims describe the metes and bounds of the patentee's intellectual property. Forcing Axsome to narrow its claims at this time, thereby restricting its ability to enforce its intellectual property, would violate Axsome's due process rights. In *In re Katz Interactive Processing Patent Litigation* (cited by Defendant below), the Federal Circuit expressly recognized that, while the Court has discretion to order a plaintiff to reduce the number of asserted claims, the Court's exercise of its discretion must still comport with due process. 639 F.3d 1303, 1312-13 (Fed. Cir. 2011). In other words, the chosen procedure must not "creat[e] a significant risk that [the patentee] would be erroneously deprived of property rights in [the] claims." *Id.* at 1311-12. Defendant's attorney argument that most of the asserted claims "may ultimately be dismissed" does not meet this standard. Regarding the case generally, the limitations on depositions and other discovery mechanisms are the same no matter the number of claims that are asserted. Accordingly, Defendant will not suffer any prejudice if the parties wait until the completion of expert discovery before attempting to narrow claims for trial. On the other hand, limiting the number of claims now would clearly implicate Axsome's due process rights.

Apotex's citation to *Katz* is unavailing. *Katz* was a multi-district litigation with **165 defendants**. *See Katz*, 639 F.3d at 1309. This is a single action involving a single defendant. Furthermore, Apotex has made no showing that the asserted claims are duplicative as applied to Apotex's ANDA product. The claims that Apotex cites to as being "substantially duplicative" below are not duplicative. For example, claim 1 of the '805 patent recites a method of treating migraine comprising orally administering a combination of a complex of meloxicam and a sulfobutylether-β-cyclodextrin ("SBEβCD"), a bicarbonate, and "about **8 mg to about 13 mg of a rizatriptan**," "wherein the combination is in **a single dosage form**" "to a human being who is suffering from an acute attack of migraine pain or migraine aura," and "suffering from **photophobia with migraine pain or migraine aura**" "wherein the single dosage form is structured so that administering the single dosage form to healthy human subjects would result in a **mean $T_{max}$ of meloxicam of 110 minutes or less and an $AUC_{0-24}$ of meloxicam of about 30 μg·hr/mL**

7

*to about 50 μg·hr/mL*" and "wherein *2 hours after* the combination is orally administered, the human being experiences *greater relief from photophobia than* the human being would experience 2 hours after the same amount of the *rizatriptan is orally administered alone*." Claim 1 of the '295 patent, on the other hand, recites a method of treating migraine comprising orally administering a combination of a complex of meloxicam and SBEβCD, a bicarbonate, and a rizatriptan, "wherein the combination is orally administered *when the human being is suffering from moderate to severe migraine pain* of an acute migraine, and wherein the human being *experiences sustained pain relief from 2 hours to 24 hours after the combination is orally administered*." The claims contain distinct elements, meaning the claims cover distinct aspects of the patented inventions. The claims concern distinct property rights.

It would be unprecedented, inappropriate, premature, and highly prejudicial to Axsome to limit the number of asserted claims according to Defendant's proposed schedule. Axsome has a right to assert its patents, because "[t]he basic right concomitant to the grant of a patent is the right of exclusivity founded in the Constitution." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir.), *on reh'g*, 771 F.2d 480 (Fed. Cir. 1985). Defendant's request to limit the number of asserted claims is particularly unfounded at this stage of the litigation. Accordingly, Plaintiff respectfully submits that the parties should discuss this issue later in the case, such as after expert discovery, which is common in this District.

**Defendant's Position**: As is standard in Hatch-Waxman cases, discovery should proceed in phases, with expert discovery following the completion of fact discovery.

Furthermore, as explained in Defendant's opening brief in support of its Rule 12(c) motion (ECF No. 37 at 16–18), this Hatch-Waxman case is unprecedented in both size and scope. Plaintiff asserts 75 patents, encompassing approximately *1,856 claims*, the majority of which fall within the scope of Apotex's Rule 12(c) motion. Many of these patent claims are also substantially duplicative. *Compare* ECF No. 1-42, '137 patent claim 1, *with* ECF No. 1-45, '805 patent at claim 1, *with* ECF No. 1-46, '806 patent at claim 1, *with* ECF No. 1-47, '483 patent at claim 1, *with* ECF No. 1-49, '295 patent at claim 1.[4]

---

[4] Axsome's attempt to dispute this by comparing claim 1 of the '295 patent (ECF No. 1-49) with claim 1 of the '805 patent (ECF No. 1-45)—arguing that the '295 patent recites a "suffering from moderate to severe migraine pain" and "experiences sustained pain relief from 2 hours to 24 hours after the combination is orally administered." —is misleading at best. In reality, *both* claims recite "method[s] of treating migraine, comprising orally administering" a combination of meloxicam, a sulfobutylether-β-cyclodextrin, a bicarbonate, and a rizatriptan. Both claims target a human being with acute migraine and use the same coadministered active ingredients and route of administration. The alleged additional recitations in claim 1 of '295 patent describe the expected clinical effect of the same treatment regimen and do not change the fact that the core claimed methods in the '295 and '805 patents remain materially the same. As an additional example, the '137, '805, '806, and '483 patents further confirm that Axsome's "distinct aspects of the patented invention" argument is wrong. Claim 1 of each of these patents uses the same basic template: a method of treating migraine by orally administering to a human suffering an acute migraine attack a single dosage form that contains (1) a complex of meloxicam and sulfobutylether-β-cyclodextrin,

8

Requiring Defendant to prepare and serve the detailed, claim-specific invalidity and non-infringement contentions mandated by the Court's Local Patent Rules for each of the 1,856 asserted claims—particularly when many are duplicative and most may ultimately be dismissed—would be unduly burdensome and disproportionate to the needs of the case. Further, without an early and substantial narrowing of the scope of Plaintiff's case, this case risks becoming an unwieldy, cost-prohibitive matter instead of a fair inquiry into whether Defendant's ANDA has violated legitimate patent rights. "A district court has inherent authority to reasonably limit both the number of claim terms to be construed and the number of patent claims the parties may assert, to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Masimo Corp. Philips Elecs N. Am. Corp.*, 918 F. Supp. 2d 277, 282 (D. Del. 2013) (internal quotations and footnotes omitted); *see also Data Treasury Corp. v. Wells Fargo & Co.*, C.A. No. 2:06-CV-72 (DF), 2006 WL 8464165, at *2 (E.D. Tex. Oct. 25, 2006) ("[W]hen the number of claims being asserted is so voluminous, litigation becomes extremely burdensome on the parties and the Court."). That Apotex may have "***chose[n]*** to develop its [allegedly] infringing product," "***chose[n]*** to file Paragraph IV certifications" and "***chose[n]*** to challenge Axsome's patents" (Plaintiff's Position, *supra*)[5] does not eliminate Rule 26(b)(1)'s express proportionality requirement.

_____

(2) a bicarbonate, and (3) about 8 mg to about 13 mg rizatriptan, where the dosage form yields a mean Tmax of meloxicam of 110 minutes or less and an $AUC_{0-24}$ of about 30 to about 50 µg·hr/mL. The claimed methods are virtually identical except for the specific migraine symptoms listed at the end of each claim. Thus, these claims divide a single treatment regimen into a set of minor, symptom-specific variants, which show that many of the patents are substantially duplicative of one another.

[5] Plaintiff's arguments regarding the purported "cho[ices]" Apotex may have made before this lawsuit was filed ignore a fundamental fact: it was ***Axsome*** that chose to file for, prosecute, and list ***seventy-five patents*** in the Orange Book for its Symbravo product—an accumulation that can only be described as a "patent thicket" (a dense web of overlapping patents to block competition). Both Congress and the Executive Branch have recognized such thickets as anticompetitive tactics within the Hatch–Waxman framework. *See* ECF No. 36-4, Shannon Decl. Ex. C, 8/28/23 Ltr. from Sen. E. Warren and Rep. P. Jaypal to FDA at 4-5; ECF No. 36-5, Shannon Decl. Ex. D, 9/10/21 Ltr. from FDA to PTO at 3; ECF No. 36-6, Shannon Decl. Ex. E, Dkt. No. PTO-P-2024-0003, Terminal Disclaimer Practice to Obviate Nonstatutory Double Patenting, 7/9/24 FTC Comment at 2.

Axsome relies on *Mayor & City Counsel of Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022) ("*AbbVie*") to argue that courts have approved its patent-thicket strategy. But that reading extracts far more from *AbbVie* than the decision supports. *AbbVie* is a non-binding, out-of-circuit case, and no Third Circuit court—and, to Apotex's knowledge, no other court at all—has meaningfully addressed this specific issue, despite the concerns expressed by both Congress and the Executive Branch. Moreover, *AbbVie* explicitly recognized an exception where the asserted patents are invalid, and emphasized that the appellants in that case—third-party payors who never participated in the underlying patent litigation—had not challenged the validity of the patents at issue. *AbbVie Inc.*, 42 F.4th at 712-13. Here, by contrast, Apotex has challenged all of

Accordingly, Defendant respectfully requests the following practical case-management measures for the benefit of the parties and the Court:

<u>Order Deferring Written Discovery on the SOBEDEX Patents</u>:

To be clear, Defendant does not seek a stay or bifurcation of any claims or discovery. Plaintiff's extended discussion of bifurcation, therefore, is inapposite. Defendant simply requests an order deferring written discovery—specifically, invalidity, non-infringement, and infringement contentions—for the 56 patents subject to Apotex's Rule 12(c) motion (the "SOBEDEX patents") until after the Court decides that motion. Defendant is fully prepared to proceed with all other fact discovery on those patents, including document production, non-contention interrogatories, RFAs, and depositions. Defendant likewise has no objection to full discovery proceeding on the 19 patents not implicated by the Rule 12(c) motion. Requiring Defendant to serve detailed, element-by-element contentions under L. Pat. R. 3.3(c) before the Court determines whether the SOBEDEX patents will remain in the case would be disproportionate and inconsistent with Fed. R. Civ. P. 26(b)(1), particularly given that those patents may be dismissed from the case.

Moreover, deferring written discovery on the SOBEDEX patents is fully consistent with this Court's Local Patent Rules. Local Patent Rule 1.3 expressly provides, in relevant part:

> The Court may modify the obligations or deadlines set forth in these Local Patent Rules based on the circumstances of any particular case, including, without limitation, the simplicity or complexity of the case as shown by the patents, claims, products, or parties involved. Such modifications shall, in most cases, be made at the initial Scheduling Conference, but may be made at other times by the Court *sua sponte* or upon a showing of good cause.

Here, the extraordinary complexity of this case—driven by the unprecedented number of asserted patents and claims—plainly warrants a modification of the Local Patent Rules' disclosure obligations. Defendant's request is timely, raised before the initial Scheduling Conference, and Defendant attempted in good faith to reach agreement with Plaintiff but was unsuccessful. A rigid application of L. Pat. R. 3.3 and 3.6 under these circumstances would impose undue and disproportionate burdens. Deferring written discovery on the SOBEDEX patents is a reasonable, efficient, and fair case-management measure.

<u>Early Claim Narrowing</u>:

In addition, Defendant requests that Plaintiff be required to reduce the number of asserted claims as follows:

1. To 100 claims by its L. Pat. R. 3.6(b) Disclosure of Asserted Claims;

2. To 50 claims by its L. Pat. R. 3.6(g) Disclosure and Infringement Contentions;

3. To 15 claims at least 30 days before service of opening expert reports; and

---

Axsome's asserted patents on both invalidity and non-infringement grounds. *See* ECF No. 12, Apotex Answer at Affirmative Defenses and Countercls.

4.  To 10 claims by the time of the final pretrial order.

An early narrowing of asserted claims is warranted here due to the unprecedented number of asserted patents and claims.  Courts have long recognized their inherent authority to require early claim reduction, and they have done so in cases involving far fewer patents and claims than this one.  *In re Katz Interactive Call Processing Patent Litg.*, 639 F.3d 1303, 1309, 1311-13 (Fed. Cir. 2011) (upholding authority to limit patent claims in a case where the patent owner was ordered to narrow the 1,975 asserted claims down to 40 per defendant group); *Masimo*, 918 F. Supp. 2d at 278 (24 asserted patents ordered narrowed to 7 early the case); *LG Display Co., Ltd. v. AU Optronics Corp.*, 686 F. Supp. 2d 429, 434 (D. Del. 2010) (23 asserted patents ordered to be reduced to "four patents and seven claims per side"); *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-0966-CFC, 2020 WL 4437401, at *1 (D. Del. Aug. 3, 2020) (Plaintiff ordered to narrow asserted patent claims from 82 to 25 before claim construction, and then to 18 after claim construction); *Siemens Med. Sols. USA, Inc. v. Humedica, Inc.*, C.A. No. 14-880-LPS-CJB, 2015 WL 1738186, at *3 n.3 (D. Del. Apr. 8, 2015) (scheduling order requirement for Plaintiff to reduce number of asserted claims); *Data Treasury*, 2006 WL 8464165, at *2 (in case involving 6 asserted patents with 224 total claims, plaintiff ordered in the scheduling order to limit its asserted claims to 50 claims for all asserted patents within two months of the scheduling conference); *Deere & Co. v. AGCO Corp.*, C.A. No. 18-0827-CFC-JLH  (D. Del.), ECF No. 71, 3/20/19 Scheduling Order (Plaintiff ordered to limit the number of asserted claims to 39 across 13 patents prior to service of infringement contentions, then to 20 claims prior to claim construction and to 10 claims afterward).

Early narrowing here would also be consistent with this Court's Local Patent Rules, *see* L. Pat. R. 1.3.  Indeed, at least one other court in this District has imposed an early claim narrowing in a pharmaceutical drug patent case involving far fewer patents.  In *Amgen Inc. v. Samsung Bioepsis Co.*, Civil No. 24-8417 (CPO/EAP) (D.N.J.), the plaintiff initially asserted 34 patents but was ordered to reduce that number to 20 in the scheduling order.  24-8417 ECF No. 1, Compl. ¶ 5; 24-8417 ECF No. 93, Am. Scheduling Order ¶ 1(a); 24-8417 ECF No. 149, 3/5/25 Order.  Here, Axsome asserts more than twice as many patents as were at issue in *Amgen*, underscoring the need for early case narrowing in this action.[6]  The court in *Amgen* amended the scheduling order and cited and applied the Local Patent Rules for patent-disclosure deadlines.  *See* 24-8417 ECF No. 93, Am. Scheduling Order at 1.  Axsome's further suggestion that the plaintiff in *Amgen* "did not oppose early case narrowing in principle" is contradicted by the parties' joint discovery plan.  *See* 24-8417 ECF No. 81, JDP at 21–23 (defendant recounting Rule 26(f) discussions showing that the plaintiff would not voluntarily propose a schedule for early claim narrowing).

Finally, Axsome's due-process arguments are meritless and were already rejected by the Federal Circuit in *Katz*.  *Katz*, 639 F.3d at 1311–13.  As shown above, many of the 1,856 claims across the 75 patents Axsome asserts are duplicative of one another (*supra* at 8)—just as in *Katz*. *Id*. at 1311.  Further, all 75 asserted patents share a common genealogy and many are subject to

---

[6] The cases Axsome cites from this District denying early claim-narrowing are readily distinguishable because each involved far fewer patents.  *Jazz v. Lupin*, No. 21-14271 ECF No. 1, Compl. ¶ 1 (10 patents); *Celgene*, No. 10-5197 ECF No. 215, Fifth Am. Compl. ¶ 1 (14 patents); *Jazz v. Roxane*, No. 10-6108 ECF No. 1, Compl. ¶ 1 (5 patents).

11

terminal disclaimers that tie their expiration dates together,[7] further confirming that the claims are duplicative. *Id*. And, as in *Katz*, Apotex does not object to Axsome seeking leave at a later stage to add new claims that present non-duplicative issues of infringement or validity. *Id*. at 1311–12. Axsome ***never*** explains why it must assert—and seek discovery on—1,856 claims across 75 patents, or anything remotely approaching that scope, to protect its branded product in this case.

Alternative Request for Additional Time:

If the Court declines to defer written discovery on the SOBEDEX patents and/or declines to order early narrowing, Defendant requests six months from the Rule 16 conference to serve invalidity and non-infringement contentions under L. Pat. R. 3.6. Preparing contentions for more than 1,800 claims will require significant time and resources, and any shorter deadline would be unduly burdensome and prejudicial.

**(c) Proposed schedule:**

**(1) Fed. R. Civ. P. 26 Disclosures:**

**Joint Response**: The parties' proposed schedule with competing proposals for certain deadlines is attached hereto as Exhibit 1.

**(2) E-Discovery conference pursuant to L. Civ. R. 26.1(d):**

**Joint Response**: The parties have conferred regarding e-discovery and do not anticipate any issues about the disclosure or discovery of electronically stored information. The parties agree to cooperate with respect to discovery of electronically stored information.

**(3) Service of initial written discovery:**

**Joint Response**: The parties' proposed schedule with competing provisions for certain deadlines is attached hereto as Exhibit 1.

**(4) Maximum of _____ Interrogatories by each party to each other party.**

**Joint Response**: The Federal Rules of Civil Procedure provide a sufficient starting point for the number of interrogatories served by each side. Accordingly, the parties provisionally agree that each side be allowed to serve up to twenty-five (25) interrogatories. Should the need arise, the parties can discuss the possibility of additional interrogatories in the future.

---

[7] ECF No. 37, Apotex's Opening Rule 12(c) Mot. Br. at 4 n.3 (explaining that many of the patents-in-suit are in the same priority chain and share a common specification, with citations to the record); ECF No. 1-1 – 1-75, Patents-in-Suit at cover (notification that the vast majority of the patents are subject to a terminal disclaimer); FDA Electronic Orange Book entry for Symbravo, https://www.accessdata.fda.gov/scripts/cder/ob/patent_info.cfm?Product_No=001&Appl_No=21 5431&Appl_type=N (last visited Mar. 21, 2026) (identifying Apr. 11, 2036 as the expiration date for the vast majority of the 75 patents-in-suit).

**(5) Maximum of _____ depositions to be taken by each party.**

**Joint Response**:  The Federal Rules of Civil Procedure provide a sufficient starting point for the number of depositions taken by each side.  Accordingly, no change to Fed. R. Civ. P. 30(a)(2)(A)(i) regarding depositions is requested.  Should the need arise, the parties can discuss the possibility of additional depositions in the future.

**(6) Motions to amend or to add parties to be filed by:**

**Joint Response**:  The parties' proposed schedule with competing provisions for certain deadlines is attached hereto as Exhibit 1.

**(7) Factual discovery to be completed by:**

**Joint Response**:  The parties' proposed schedule with competing proposals for certain deadlines is attached hereto as Exhibit 1.

**(8) Plaintiff's expert report due on:**

**Joint Response**:  The parties' proposed schedule with competing proposals for certain deadlines is attached hereto as Exhibit 1.

**(9) Defendant's expert report due on:**

**Joint Response**:  The parties' proposed schedule with competing proposals for certain deadlines is attached hereto as Exhibit 1.

**(10) Expert depositions to be completed by:**

**Joint Response**:  The parties' proposed schedule with competing proposals for certain deadlines is attached hereto as Exhibit 1.

**(11) Dispositive motions to be served within _____ days of completion of discovery.**

**Plaintiff's Position**:  Dispositive motions are inappropriate in this case.  At present, Plaintiff does not plan to seek to file dispositive motions prior to the completion of discovery.

**Defendant's Position**:  Defendant has filed a Rule 12(c) motion seeking judgment on the pleadings of non-infringement as to the SOBEDEX patents.

Given the extraordinary breadth of Plaintiff's infringement allegations, Defendant also anticipates that summary judgment may be appropriate during or following the close of discovery to further narrow the case to a manageable scope for both the Court and the parties. Accordingly, Defendant respectfully requests that the parties be permitted to seek leave to file summary judgment motions through concise letter submissions: a three-page letter requesting leave, a five-page opposition, and a two-page reply from the party seeking leave.

**(d) Set forth any special discovery mechanism or procedure requested.**

**Joint Response**:  A Discovery Confidentiality Order will be required in this action.

**Plaintiff's Additional Response**:  Plaintiff opposes Defendant's additional response below, as outlined in Plaintiff's position on Item No. 8(b), *supra*.

**Defendant's Additional Response**:  Defendant requests an order deferring written discovery on the SOBEDEX patents until after Defendant's Rule 12(c) motion is decided, and an early case narrowing whereby Plaintiff is ordered to limit the number of asserted patent claims as outlined in Defendant's Position on Item No, 8(b), *supra*.

**(e)  A pretrial conference may take place on:**

**Joint Response**:  The parties' proposed schedule with competing proposals for certain deadlines is attached hereto as Exhibit 1.

**(f)  Trial date: (_____  Jury Trial;  ___X___  Non-Jury Trial).**

**Joint Response**:  The parties' proposed schedule with competing proposals for certain deadlines is attached hereto as Exhibit 1.

9.  **Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)?  Yes _____  No ___X___. If so, please explain.**

**Plaintiff's Response**:  Plaintiff expects that Defendant will make reasonable efforts to bring any foreign witnesses to the United States for deposition.  Should any disputes regarding deposition locations arise, Plaintiff shall attempt to resolve them with Defendant in good faith and without the Court's involvement.

**Defendant's Response**:  Defendant is a Canadian corporation headquartered in Toronto, with a U.S. affiliate located in Weston, Florida. Defendant anticipates that most of its fact witnesses will be located in either Toronto or Florida, and respectfully submits that Plaintiff's counsel would face no meaningful burden in taking the approximately 1 hour and 30 minute flight to Toronto to depose those Apotex fact witnesses who reside there.

10.  **Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced?  Yes No ___X___.**

**If so, how will electronic discovery or data be disclosed or produced?  Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.**

**Joint Response**:  The parties have conferred regarding e-discovery and do not anticipate any issues about the disclosure or discovery of electronically stored information.  The parties agree to cooperate with respect to discovery of electronically stored information.

11.     Do you anticipate entry of a Discovery Confidentiality Order?  See L. Civ. R. 5.3(b) and Appendix S.

        Joint Response: A Confidentiality Order will be required in this action.

12.     Do you anticipate any discovery problem(s) not listed above?  Describe.  Yes _____  No X___.

13.     State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise).  If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

        Joint Response:  The parties do not believe this case is appropriate for voluntary arbitration, mediation, appointment of a special master, or other special procedure at this time. The case is in its nascent stages, and the parties have different views on the issues in this case.  The parties agree to notify the Court if they believe voluntary arbitration or mediation would aid resolution of the action at a later time.

14.     Is this case appropriate for bifurcation? Yes _____  No ___X___.

15.     An interim status/settlement conference (with clients in attendance), should be held in:

        Joint Response:  The case is in its nascent stages, and the parties have different views on the issues in this case.  The parties agree to notify the Court if they believe that a settlement conference would aid resolution of the action in the future.  The parties agree that interim status conferences should occur, including throughout fact discovery.

16.     We [do _____  do not ___X___] consent to the trial being conducted by a Magistrate Judge.

17.     Identify any other issues to address at the Rule 16 Scheduling Conference.

        Plaintiff's Position:  Plaintiff does not have issues to address at this time other than the issues identified herein, including Plaintiff's opposition to Defendant's position below, as outlined in Plaintiff's position on Item No. 8(b), supra.

        Defendant's Position:  As explained in Defendant's Position for Item 8(b), supra, early narrowing of Plaintiff's infringement claims is warranted given the extraordinary number of asserted patents and claims.  Defendant also seeks an order deferring written discovery on the 56 SOBEDEX that are the subject of Apotex's Rule 12(c) motion until after the Court rules on that motion.

18.     Pursuant to Local Patent Rule 2.1(a), the parties report the following from the 26(f) conference.

15

**(1) Proposed modification of the obligations or deadlines set forth in these Local Patent Rules to ensure that they are suitable for the circumstances of the particular case (see L. Pat. R. 1.3);**

**Plaintiff's Position**:   The parties have addressed this issue in the proposed schedule attached hereto as Exhibit 1.   Plaintiff opposes Defendant's position below, as outlined in Plaintiff's position on Item No. 8(b), *supra*.

**Defendant's Position**:   Defendant seeks an order deferring written discovery on the 56 SOBEDEX that are the subject of Apotex's Rule 12(c) motion until after the Court rules on that motion, and also seeks an early case narrowing limiting the number of patent claims Plaintiff asserts as outlined in Defendant's Position for Item No. 8(b), *supra*.

**(2) The scope and timing of any claim construction discovery including disclosure of and discovery from any expert witness permitted by the court;**

**Joint Response**:   The parties have addressed this issue in their proposed schedule dates attached hereto as Exhibit 1.

**(3) The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing;**

**Joint Response**:   The parties will submit this information in the Joint Claim Construction and Prehearing Statement on the date set forth in Exhibit 1.

**(4) How the parties intend to educate the Court on the patent(s) at issue;**

**Joint Response**:   The parties intend to educate the Court on the patents at issue through at least submissions to the Court, which may include *Markman* and/or other tutorials.

**(5) The need for any discovery confidentiality order and a schedule for presenting certification(s) required by L. Civ. R. 5.3(b)(2); and**

**Joint Response**:   The parties will submit a proposed Confidentiality Order by the date set forth in Exhibit 1.

**(6)**
    **a. The availability and timing of production of invention records (including inventor laboratory notebooks and analytical test results);**

**Plaintiff's Response**:   Plaintiff's investigation regarding the availability and timing of production of invention records is ongoing.

    **b. The availability and timing of production of ANDA product research and development documents;**

16

**Defendant's Response**: Defendant's investigation regarding the availability and timing of production of ANDA product research and development documents is ongoing.

**c. The availability and timing of production of ANDA product samples;**

**Plaintiff's Response**: Axsome emphasizes the importance of early production of samples.

**Defendant's Response**: Defendant will timely produce any discoverable ANDA product samples in response to proper Rule 34 requests for production served by Plaintiff.

**d. The date of conception and the date of reduction to practice for each patent asserted in the action, if applicable;**

**Plaintiff's Response**: Plaintiff will provide the information required by the Local Patent Rules with its contentions.

**e. Each inventor's availability for deposition in the matter;**

**Plaintiff's Response**: The parties will discuss inventor depositions after any such requests have been made by Defendant.

**f. Availability of foreign witnesses for deposition and foreign documents;**

**Plaintiff's Response**: Plaintiff is currently unaware of any foreign Axsome witnesses or documents. All dates and other proposals herein assume that Defendant will bring any foreign witnesses to the United States for deposition. Additional time for discovery and/or motion practice in this Court may be required if Defendant is unwilling to do so.

**Defendant's Response**: Defendant is a Canadian corporation headquartered in Toronto, with a U.S. affiliate located in Weston, Florida. Defendant anticipates that most of its fact witnesses, as well as many of its documents, will be located either in Toronto or Florida, and it intends to produce discoverable documents and product samples maintained at its Toronto headquarters. Defendant further respectfully submits that Plaintiff's counsel would face no meaningful burden in traveling to Toronto—approximately a 1 hour and 30 minute flight—to depose those Apotex fact witnesses who reside there.

**g. Whether there is a 30-month stay and if so, when it ends;**

**Joint Response**: The 30-month stay runs until February 18, 2028.

**h. A date for substantial completion of document production and a method for determining compliance;**

**Joint Response**: The parties' proposed schedule with competing provisions for certain deadlines is attached hereto as Exhibit 1.

**i. Any other issues or matters that a party believes are time sensitive;**

**Joint Response**: None at this time.

Respectfully submitted,                    Dated:    March 23, 2026

s/ Charles M. Lizza                                  s/ Arnold B. Calmann
Charles M. Lizza                                     Arnold B. Calmann
Sarah A. Sullivan                                    abc@saiber.com
Alexander L. Callo                                   Katherine A. Escanlar
SAUL EWING LLP                                       kescanlar@saiber.com
One Riverfront Plaza, Suite 1520                     SAIBER LLC
Newark, New Jersey 07102-5426                        7 Giralda Farms, Suite 360
(973) 286-6700                                       Madison, New Jersey 07940
clizza@saul.com                                      973.622.333

*Of Counsel:*                                        *Of Counsel:*

F. Dominic Cerrito                                   Andrew M. Alul (aalul@taftlaw.com)
Eric C. Stops                                        Richard T. Ruzich (rruzich@taftlaw.com)
Catherine T. Mattes                                  Roshan P. Shrestha, Ph.D.
Marta A. Godecki                                     (rshrestha@taftlaw.com)
Lourania M. Oliver                                   Luke T. Shannon (lshannon@taftlaw.com)
QUINN EMANUEL URQUHART &                             TAFT STETTINIUS & HOLLISTER LLP
SULLIVAN, LLP                                        111 East Wacker Drive
295 Fifth Avenue                                     Suite 2600
New York, New York 10016                             Chicago, IL 60601
(212) 849-7000                                       Telephone: 312-527-4000


                                                     *Attorneys for Defendant*
*Attorneys for Plaintiff*                            *Apotex Inc.*
*Axsome Therapeutics, Inc.*

18

**Exhibit 1**

| Event | Plaintiff's Proposed Dates | Defendant's Proposed Dates |
|---|---|---|
| Parties exchange Rule 26(a)(1) disclosures | 4/2/2026 | 4/2/2026 |
| Disclosure of Asserted Claims | 4/2/2026<br><br>Plaintiffs will identify the asserted claims of the patents in suit | 4/2/2026<br><br>Limited to 100 patent claims |
| Parties submit proposed discovery confidentiality order | 4/9/2026 | 4/9/2026 |
| Defendant serves non-infringement and invalidity contentions | 6/29/2026 | 6/29/2026 [9/28/2026, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Plaintiff serves infringement contentions and responses to invalidity contentions | 10/29/2026<br><br>As per Local Patent Rules 3.6(g) and 3.6(i), Plaintiff will provide its infringement contentions and responses to Defendant's invalidity contentions | 9/28/2026 [12/30/2026, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing]<br><br>Infringement contentions limited to 50 patent claims |
| Parties exchange proposed claim terms for construction | 11/12/2026 | 10/12/2026 [1/11/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Parties exchange preliminary proposed constructions and identification of intrinsic and extrinsic supporting evidence | 12/3/2026 | 10/26/2026 [1/25/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Parties exchange identification of all intrinsic and extrinsic evidence they intend to rely upon in opposing any proposed claim construction and thereafter meet and confer to narrow issues | 12/17/2026 | 11/6/2026 [2/5/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |

**Exhibit 1**

| Event | Plaintiff's Proposed Dates | Defendant's Proposed Dates |
|---|---|---|
| Joint Claim Construction and Prehearing Statement | 1/12/2027 | 11/20/2026 [2/19/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Parties complete all fact discovery relating to claim construction | 2/11/2027 | 12/21/2026 [3/15/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Substantial completion of document production | 2/11/2027 | 12/30/2026 [3/19/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Opening *Markman* briefs | 2/26/2027 | 1/18/2027 [3/26/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Parties complete all expert discovery pertaining to *Markman* issues | 3/30/2027 | 2/8/2027 [4/16/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Responding *Markman* briefs | 4/27/2027 | 3/1/2027 [5/7/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Parties submit to the Court a proposed schedule for a *Markman* hearing | 5/11/2027 | 3/8/2027 [5/14/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| *Markman* hearing | TBD | TBD |

2

**Exhibit 1**

| Event | Plaintiff's Proposed Dates | Defendant's Proposed Dates |
|---|---|---|
| Last day to seek to add new parties or amend pleadings | 6/25/2027 | 4/16/2027 [6/11/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Close of fact discovery | 9/2/2027 | 6/28/2027 [8/9/2027, if no deferral order on written discovery for the SOBEDEX patents and no early case narrowing] |
| Opening expert reports | 60 days after the close of fact discovery or the Court's *Markman* opinion, whichever is later | 30 days after the close of fact discovery or the Court's *Markman* opinion, whichever is later<br><br>Plaintiff limited to 15 claims 30 days before service of expert reports |
| Responding expert reports | 60 days after opening expert reports | 45 days after opening expert reports |
| Reply expert reports | 45 days after responding expert reports | 30 days after responding expert reports |
| Close of expert discovery | 60 days after reply expert reports | 45 days after reply expert reports |
| Pretrial Order | TBD | TBD<br><br>Plaintiff limited to 10 patent claims |
| Pretrial Conference | TBD | TBD |
| Trial | TBD | TBD |

3