# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AXSOME THERAPEUTICS, INC.,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**APOTEX INC.,**<br><br>    **Defendant.** | Civil Action No. 2:25-cv-16038-MEF-AME<br><br>Return Date:  April 6, 2026<br><br>Oral Argument Requested<br><br>**HIGHLY CONFIDENTIAL**<br>*DOCUMENT FILED UNDER SEAL*<br>*ELECTRONICALLY* |

## DEFENDANT APOTEX'S OPENING BRIEF IN SUPPORT OF ITS RULE 12(c) <u>MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>

Arnold B. Calmann
(abc@saiber.com)
Katherine A. Escanlar
(kescanlar@saiber.com)
SAIBER LLC
7 Giralda Farms, Suite 360
Madison, New Jersey 07940
Telephone:  973.622.333

Andrew M. Alul
(aalul@taftlaw.com)
Richard T. Ruzich
(rruzich@taftlaw.com)
Roshan P. Shrestha, Ph.D.
(rshrestha@taftlaw.com)
Luke T. Shannon
(lshannon@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
Telephone: 312-527-4000

*Attorneys for Defendant Apotex Inc.*

# **TABLE OF CONTENTS**

TABLE OF ABBREVIATIONS ................................................................................... v

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

RELEVANT BACKGROUND .................................................................................. 2

    I.     THE HATCH-WAXMAN PROCESS ........................................................... 2

    II.    APOTEX'S ANDA PRODUCT .................................................................. 3

    III.   THE SOBEDEX PATENTS ....................................................................... 4

ARGUMENT ............................................................................................................. 6

    I.     LEGAL STANDARD ................................................................................. 6

         A.    Rule 12(c) ......................................................................................... 6

         B.    Patent Infringement ......................................................................... 7

             1.    Literal Infringement .............................................................. 7

             2.    Doctrine of Equivalents ........................................................ 7

             3.    Disclosure-Dedication Doctrine ............................................ 8

    II.    APOTEX IS ENTITELD TO PARTIAL JUDGMENT OF NON-INFRINGEMENT ON THE PLEADINGS ...................................................... 9

         A.    Axsome's Conclusory Allegations Are Not Entitled to the Assumption of Truth ........................................................................ 9

         B.    Apotex Does Not and Will Not Infringe the SOBEDEX Patents ......................... 11

             1.    No Direct Infringement ........................................................ 11

             2.    No Literal Infringement ........................................................ 11

             3.    The Disclosure-Dedication Doctrine Bars Axsome's Infringement Claims under the Doctrine of Equivalents .................................................. 12

         C.    No Indirect Infringement ................................................................ 15

         D.    No § 271(e)(2)(A) Infringement ..................................................... 15

    III.   POLICY CONSIDERATIONS STRONGLY SUPPORT EARLY CONSIDERATION OF THE INSTANT MOTION ....................................... 16

CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
29 F.3d 855 (3d. Cir. 1994)........................................................................................ 7

*Apotex, Inc. v. Daiichi Sankyo, Inc.*,
781 F.3d 1356 (Fed. Cir. 2015)................................................................................. 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................. 9

*AstraZeneca Pharm. LP v. Apotex Corp.*,
669 F.3d 1370 (Fed. Cir. 2012)............................................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................. 9

*Ben Venue Labs. v. Novartis Pharm. Corp.*,
146 F. Supp. 2d 572 (D.N.J. 2001) ......................................................................... 2

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011)..................................................................................... 10

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*,
527 F.3d 1278 (Fed. Cir. 2008)................................................................................ 2

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
132 S.Ct. 1670 (2012) ............................................................................................. 16

*Connelly v. Lane  Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016)..................................................................................... 9

*DiCarlo v. St. Mary Hospital*,
540 F.3d 255 (3d Cir. 2008)..................................................................................... 6

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)........................................................................ 7, 10, 15

*Eagle Pharm. Inc. v. Slayback Pharma LLC*,
958 F.3d 1171 (Fed Cir. 2020)........................................................................ 6, 8, 13, 14

*Glaxo, Inc. v. Novopharm, Ltd.*,
110 F.3d 1562 (Fed. Cir. 1997)........................................................................ 9, 10, 15

*In re Asbestos Prods. Liab. Litig.*,
822 F.3d 125 (3d Cir. 2016)............................................................................... 7, 11

*In re Bendamustine Cosol. Cases*,
C.A. No. 13-2046-GMS, 2015 WL 1951399 (D. Del. Apr. 29, 2015) ................................ 11, 14

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)............................................................................... 6, 11

ii

*James v. Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012).................................................................................. 10

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
  285 F.3d 1046 (Fed. Cir. 2002)................................................................................ 8

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993)..................................................................... 7, 10, 15

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  134 S. Ct. 2111 (2014) ................................................................................... 7, 15

*London v. Carson Pirie Scott & Co.*,
  946 F.2d 1534 (Fed. Cir. 1991).............................................................................. 7

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010).................................................................................... 6

*McMahon v. Gen'l Dynamics Corp.*,
  933 F. Supp. 2d 682 (D.N.J. 2013) ...................................................................... 16

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
  C.A. No. 12-3289 (PGS)(LHG), 2014 WL 997532 (D.N.J. Jan. 6, 2014) .............................. 18

*Morphosys AG v. Jannsen Biotech, Inc.*,
  358 F. Supp. 3d 354 (D. Del. 2019)...................................................................... 14

*Par Pharm., Inc. v. Luitpold Pharm., Inc.*,
  16-cv-02290 (WHW) (CLW), 2017 WL 452003 (D.N.J. Feb. 1, 2017) ................................... 11

*PBGC v. White Consol. Indus.*,
  998 F.2d 1192 (3d Cir. 1993)................................................................................... 7

*Pfizer, Inc. v. Teva Pharm. USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005)............................................................................... 8

*PSC Comput. Prods. v. Foxconn Int'l, Inc.*,
  355 F.3d 1353 (Fed. Cir. 2004)............................................................................... 8

*Revell v. Port Auth. of N.Y.*,
  598 F.3d 128 (3d Cir. 2010).................................................................................... 6

*Sanofi-Aventis v. Barr Labs., Inc.*,
  598 F. Supp. 2d 632 (D.N.J. 2009) ...................................................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................................ 16

*Transco Prods. Inc. v. Performance Cont., Inc.*,
  38 F.3d 351 (Fed. Cir. 1994)................................................................................. 17

*Venetec Int'l, Inc. v. Nexus Med., LLC*,
  541 F. Supp. 2d 612 (D. Del. 2008)...................................................................... 11

*V-Formation, Inc. v. Benetton Grp. SpA*,
  401 F.3d 1307 (Fed. Cir. 2005).......................................................................... 7, 12

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
520 U.S. 17 (1997) ............................................................................................ 8

**Statutes**

21 U.S.C. § 355(a) ............................................................................................... 2

21 U.S.C. § 355(b)(1) .......................................................................................... 2

21 U.S.C. § 355(j)(2)(A)(ii), (iv) ........................................................................ 3

21 U.S.C. § 355(j)(2)(A)(vii) .............................................................................. 3

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ....................................................................... 3

21 U.S.C. § 355(j)(2)(B) ...................................................................................... 3

21 U.S.C. §§ 355(j)(2)(A)(vii)-(viii) ................................................................. 17

21 U.S.C. 21 U.S.C. § 355(j) ............................................................................... 2

35 U.S.C § 271(e)(2) ........................................................................................... 3

35 U.S.C. § 271(a) ...................................................................................... 7, 9, 10

35 U.S.C. § 271(b) ......................................................................................... 9, 10

35 U.S.C. § 271(c) ......................................................................................... 9, 10

35 U.S.C. § 271(e)(2)(A) ............................................................................... 9, 15

35 U.S.C. §§ 271 (b)(c) ....................................................................................... 7

35 U.S.C. §§ 271(a)-(c) ..................................................................................... 15

**Other Authorities**

*An Orange Book Landscape: Drugs, Patents, and Generic Competition*, 77 FOOD & DRUG L.J.
51, 56-57 (2022) ............................................................................................... 16

**Rules**

FED. R. EVID. 201(b) ........................................................................................... 16

**TABLE OF ABBREVIATIONS**

| Abbreviation | Definition |
|---|---|
| ANDA | Abbreviated New Drug Application pursuant to 21 U.S.C. § 255(j) |
| Apotex | Defendant Apotex Inc. |
| Apotex's ANDA | ANDA No. 220803 |
| Axsome | Plaintiff Axsome Therapeutics, Inc. |
| FDA | United States Food and Drug Administration |
| Hatch-Waxman or Hatch-Waxman Act | Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (codified as amended at 21 U.S.C. § 355, 28 U.S.C. § 2201, and 35 U.S.C. §§ 156, 271, & 282) |
| ██████ | ████████████████████ |
| NDA | New Drug Application pursuant to 21 U.S.C. § 355(b)(1) |
| Orange Book | FDA publication officially titled, *Approved Drug Products and Therapeutic Equivalence Evaluations* |
| PTO and USPTO | United States Patent and Trademark Office |
| SBEβCD or SOBEDEX | sulfobutyl ether β-cyclodextrin |
| SBEβCD patents or SOBEDEX patents | U.S. Patent Nos. 9,821,075 (ECF No. 1-1), 10,029,010 (ECF No. 1-2), 10,058,614 (ECF No. 1-3), 10,137,131 (ECF No. 1-4), 10,195,278 (ECF No. 1-5), 10,265,324 (ECF No. 1-6), 10,363,312 (ECF No. 1-7), 10,471,014 (ECF No. 1-11), 10,471,069 (ECF No. 1-12), 10,512,692 (ECF No. 1-13), 10,512,693 (ECF No. 1-14), 10,517,950 (ECF No. 1-15), 10,532,101 (ECF No. 1-16), 10,537,642 (ECF No. 1-17), 10,561,664 (ECF No. 1-18), 10,583,144 (ECF No. 1-19), 10,653,777 (ECF No. 1-20), 10,688,185 (ECF |

|  | No. 1-22), 10,695,429 (ECF No. 1-23), 10,695,430 (ECF No. 1-24), 10,702,535 (ECF No. 1-25), 10,702,602 (ECF No. 1-26), 10,722,583 (ECF No. 1-27), 10,729,696 (ECF No. 1-28), 10,729,697 (ECF No. 1-29), 10,729,773 (ECF No. 1-30), 10,758,617 (ECF No. 1-31), 10,758,618 (ECF No. 1-32), 10,780,165 (ECF No. 1-33), 10,780,166 (ECF No. 1-34), 10,799,588 (ECF No. 1-35), 10,821,181 (ECF No. 1-36), 10,821,182 (ECF No. 1-37), 10,894,053 (ECF No. 1-38), 10,905,693 (ECF No. 1-39), 10,918,722 (ECF No. 1-40), 10,933,136 (ECF No. 1-41), 10,933,137 (ECF No. 1-42), 10,940,153 (ECF No. 1-43), 11,013,805 (ECF No. 1-45), 11,013,806 (ECF No. 1-46), 11,020, 483 (ECF No. 1-47), 11,045,549 (ECF No. 1-48), 11,135,295 (ECF No. 1-49), 11,207,328 (ECF No. 1-50), 11,219,626 (ECF No. 1-51), 11,285,213 (ECF No. 1-52), 11,426,414 (ECF No. 1-55), 11,504,429 (ECF No. 1-58), 11,607,456 (ECF No. 1-62), 11,617,755 (ECF No. 1-63), 11,617,791 (ECF No. 1-65), 11,759,522 (ECF No. 1-69), 11,801,250 (ECF No. 1-70), 11,806,354 (ECF No. 1-71), and 12,128,052 (ECF No. 1-74) |
| SBEβCD patent counts | Counts I-VII, XI-XX, XXII-XLIII, XLV-LII, LV, LVIII, LXII-LXIII, LXV, LXIX-LXXI, and LXXIV of the Complaint (ECF No. 1) |
| Symbravo | Axsome's brand product, Symbravo (meloxicam and rizatriptan benzoate) tablets, 20 mg; EQ 10 mg base, for oral use |

Defendant Apotex respectfully submits the instant Opening Brief in support of its Rule 12(c) Motion for Partial Judgment on the Pleadings.

**<u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>**

Apotex has filed ANDA No. 220803 with the FDA seeking approval to market a generic version of Plaintiff Axsome's Symbravo (meloxicam and rizatriptan benzoate) tablets, approved for migraine treatment.  In response, Axsome instituted this suit alleging infringement of *all 75 patents* currently listed in the Orange Book for Symbravo, ECF No. 1, Compl., placing squarely before this Court a highly unusual, if not unprecedented, case in the over 40-year history of the Hatch-Waxman Act.  As explained further below,[1] the sheer size and scope of this lawsuit puts Apotex's attempt to bring to market a lower-priced, generic alternative to Symbravo in serious jeopardy.  Without an early and substantial narrowing of the scope of Axsome's case, Apotex's attempt to bring to market a lower-priced alternative for Symbravo will become a cost-prohibitive endeavor; instead of a reasonable inquiry into whether Apotex's ANDA has infringed legitimate patent rights, the case will be become an unwieldy exercise in litigation by attrition.

The instant Motion provides the Court and the parties with a fair opportunity to narrow the scope of the case by dismissing from Axsome's Complaint *56 patents* for which it cannot state a plausible claim for infringement.  The grounds for the instant Motion are straight forward:  each and every claim of the 56 patents ("the SOBEDEX patents") that are the subject Counts I-VII, XI-XX, XXII-XLIII, XLV-LII, LV, LVIII, LXII-LXIII, LXV, LXIX-LXXI, and LXXIV ("the SOBEDEX patent counts") requires a specific excipient, sulfobutyl ether β-cyclodextrin ("SOBEDEX" or "SBEβCD"), ████████████████████████

████████████████████████████████████

---

[1] *See* Argument Section III, *infra*.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ Axsome is thus foreclosed from asserting infringement under the doctrine of equivalents to capture Apotex's ANDA product pursuant to the Disclosure-Dedication doctrine. For these reasons, explained more fully below, Apotex is entitled to partial judgment of non-infringement on the pleadings.

## RELEVANT BACKGROUND

### I.     THE HATCH-WAXMAN PROCESS

The Hatch-Waxman Act "governs the [FDA's] approval of new and generic drugs." *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1282 (Fed. Cir. 2008) ("*Forest*"). It requires a brand drug company seeking FDA approval to market a new drug to submit a New Drug Application ("NDA") containing studies showing the drug is safe and effective in humans, and "inform[ing] the FDA of all patents covering its drug or the methods of using the drug." *Id.*; *see also* 21 U.S.C. § 355(a), (b). The FDA lists all such patents in its Orange Book.[2]

"[T]o facilitate the development of generic versions of [approved] drugs, the Hatch-Waxman Act provides an Abbreviated New Drug Application ("ANDA") process" that allows generic drug applicants "to rely on the results of the safety and efficacy studies that supported the FDA's approval of the [approved] drug." *Forest*, 527 F.3d at 1282 (citing 21 U.S.C. 21 U.S.C. § 355(j)). "Under the ANDA process, a generic drug company must submit information to show, *inter alia*,

---

[2] The "Orange Book," an FDA publication, is officially titled, *Approved Drug Products and Therapeutic Equivalence Evaluations*, and "is the comprehensive listing of all drug products approved for sale by the FDA," *Ben Venue Labs. v. Novartis Pharm. Corp.*, 146 F. Supp. 2d 572, 574 n.1 (D.N.J. 2001), and includes—for each drug product—a listing of patents that "could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug," 21 U.S.C. § 355(b)(1) (*see also Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356, 1358 (Fed. Cir. 2015) (explaining Orange Book patent listing requirements)).

that its generic drug and the relevant listed drug share the same active ingredients and are bioequivalent." *Id*. (citing 21 U.S.C. § 355(j)(2)(A)(ii), (iv)). In addition, for each patent listed for the approved drug in the Orange Book, "the ANDA filer must certify— (I) that that [the required] patent information has not been filed [with the FDA], (II) that such patent has expired, (III) the date on which such patent will expire, or (IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted." *Id*. at 1282-83 (citing 21 U.S.C. § 355(j)(2)(A)(vii)). As the Federal Circuit has explained:

> If a generic drug company seeks to market a generic version of a listed drug before the expiration of Orange-Book-listed patents covering that drug, it must file a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV), *i.e.* a ''Paragraph IV certification.''…. All Paragraph IV ANDA filers must provide notice of their Paragraph IV certification to both the patent owner and the NDA holder. 21 U.S.C. § 355(j)(2)(B). This notice must set forth a "detailed statement of the factual and legal basis for the opinion of the applicant that the patent is invalid or will not be infringed."

*Id*. at 1283 (case citation omitted).

A Paragraph IV certification constitutes an "artificial" act of infringement for purposes of establishing jurisdiction in the Federal Courts. *Id*.; *see also* 35 U.S.C § 271(e)(2). If the brand company sues the generic within 45 days of receipt of notice of the Paragraph IV certification, "an automatic thirty-month stay goes into effect, during which the FDA cannot approve the ANDA unless the suit is resolved or the patent expires." *Id*. at 1288 n.7.

## II.    APOTEX'S ANDA PRODUCT

Apotex filed its ANDA seeking FDA approval to market a generic version of Axsome's Symbravo. ECF No. 1, Compl. ¶¶ 1, 91. ██████████████████

████████████████████████████████████

Axsome instituted this suit alleging infringement of 75 patents listed in the Orange Book for Symbravo. *Id*. at ¶¶ 96-770.

3

### III.    THE SOBEDEX PATENTS

The patents-in-suit are broadly directed to pharmaceutical compositions of meloxicam, a non-steroidal anti-inflammatory drug ("NSAID"), and methods of treatment using those compositions.  *See generally* Compl. ¶¶ 5-79; *id*. at Exs. 1-75, patents-in-suit; *id*. at Ex. 1, '075 patent at col. 1, l. 16 – col. 2, l. 17.  More specifically, the specification of the patents-in-suit discloses that "[m]eloxicam and some other NSAIDs have poor aqueous solubility which may reduce bioavailability and slow the onset of pain relief resulting from their use," *id*. at Ex. 1, '075 patent at col. 1, ll. 39-41, and further disclose as one solution to this problem "complexes" of meloxicam with a cyclodextrin.  Cyclodextrins "are generally cyclic polysaccharides," which, according to the patents, have "a bucket-like shape" that can "incorporate the [meloxicam] into the center" or "aggregate around the [meloxicam] in a micelle-type structure. . . . to increase the bioavailability of [meloxicam], *id*. at col. 1, ll. 43-63; *id*. at col. 5, ll. 43-50; *see also id*. at Abstract.

[3]

Of the 75 patents-in-suit, 56 of them—the SOBEDEX patents[4]—require pharmaceutical

---

[3] *See, e.g.*, Compl. Ex. 1, U.S. Patent No. 9,821,075 at Related U.S. Application Data and specification; *id*. at Ex. 2, U.S., Patent No. 10,058,614 at Related U.S. Application Data and specification; *id*. at Ex. 23, U.S. Patent No. 10,695,420 at Related U.S. Application Data and specification; *id*. at Ex. 45, U.S. Patent No. 11,013,805 at Related U.S. Application Data and specification; *id*. at Ex. 62, U.S. Patent No. 11,607,456 at Related U.S. Application Data and specification.

[4] U.S. Patent Nos. 9,821,075 ("'075 patent") (Count I), 10,029,010 (the "'010 patent") (Count II), 10,058,614 (the "'614 patent") (Count III), 10,137,131 (the "'131 patent") (Count IV), 10,195,278

dosage forms or combinations of meloxicam administered (or complexed) with SOBEDEX in each and every one of their claims. *See generally* ECF No. 1, Compl. Exs. 1-7, 11-20, 22-43, 45-52, 55, 58, 62-63, 65, 69-71, and 74, SOBEDEX patents at claims. ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

---

(the "'278 patent") (Count V), 10,265,324 (the "'324 patent") (Count VI), 10,363,312 (the "'312 patent") (Count VII), 10,471,014 (the "'014 patent") (Count XI), 10,471,069 (the "'069 patent") (Count XII), 10,512,692 (the "'692 patent") (Count XIII), 10,512,693 (the "'2,693 patent") (Count XIV), 10,517,950 (the "'950 patent") (Count XV), 10,532,101 (the "'101 patent") (Count XVI), 10,537,642 (the "'642 patent") (Count XVII), 10,561,664 (the "'664 patent") (Count XVIII), 10,583,144 (the "'144 patent") (Count XIX), 10,653,777 (the "'777 patent") (Count XX), 10,688,185 (the "'185 patent") (Count XXII), 10,695,429 (the "'5,429 patent") (Count XXIII), 10,695,430 (the "'430 patent") (Count XXIV), 10,702,535 (the "'535 patent") (Count XXV), 10,702,602 (the "'602 patent") (Count XXVI), 10,722,583 (the "'583 patent") (Count XXVII), 10,729,696 (the "'696 patent") (Count XXVIII), 10,729,697 (the "'697 patent") (Count XXIX), 10,729,773 (the "'773 patent") (Count XXX), 10,758,617 (the "'617 patent") (Count XXXI), 10,758,618 (the "'618 patent") (Count XXXII), 10,780,165 (the "'165 patent") (Count XXXIII), 10,780,166 (the "'166 patent") (Count XXXIV), 10,799,588 (the "'588 patent") (Count XXXV), 10,821,181 (the "'181 patent") (Count XXXVI), 10,821,182 (the "'182 patent") (Count XXXVII), 10,894,053 (the "'053 patent") (Count XXXVIII), 10,905,693 (the "'5,693 patent") (Count XXXIX), 10,918,722 (the "'722 patent") (Count XL), 10,933,136 (the "'136 patent") (Count XLI), 10,933,137 (the "'137 patent") (Count XLII), 10,940,153 (the "'153 patent") (Count XLIII), 11,013,805 (the "'805 patent") (Count XLV), 11,013,806 (the "'806 patent") (Count XLVI), 11,020,483 (the "'483 patent") (Count XLVII), 11,045,549 (the "'549 patent") (Count XLVIII), 11,135,295 (the "'295 patent") (Count XLIX), 11,207,328 (the "'328 patent") (Count L), 11,219,626 (the "'626 patent") (Count LI), 11,285,213 (the "'213 patent") (Count LII), 11,426,414 (the "'414 patent") (Count LV), 11,504,429 (the "'4,429 patent") (Count LVIII), 11,607,456 (the "'456 patent") (Count LXII), 11,617,755 (the "'755 patent") (Count LXIII), 11,617,791 (the "'791 patent") (Count LXV), 11,759,522 (the "'522 patent") (Count LXIX), 11,801,250 (the "'250 patent") (Count LXX), 11,806,354 (the "'354 patent") (Count LXXI), and 12,128,052 (the "'052 patent") (Count LXXIV).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

## ARGUMENT

Axsome has not stated, and cannot state, a plausible claim for infringement of the SOBEDEX patents; Apotex is thus entitled to judgment of non-infringement on the SOBEDEX patent counts.

## I.    LEGAL STANDARD

### A.    Rule 12(c)

Fed. R. Civ. P. 12(c) provides that after "the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Pleadings this this case closed on January 20, 2026, with the filing of Axsome's answer to Apotex's Counterclaims.  ECF No. 17.

Rule 12(c) judgment is appropriate when the moving party clearly establishes that there are "no material issues of fact, and that he or she is entitled to judgment as a matter of law." *Eagle Pharm. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed Cir. 2020) (quoting *DiCarlo v. St. Mary Hospital*, 540 F.3d 255, 259 (3d Cir. 2008) ).  "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y.*, 598 F.3d 128, 134 (3d Cir. 2010).  Under those standards, this Court is to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  "In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any 'undisputedly authentic document that a defendant attaches as an

6

exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)." *In re Asbestos Prods. Liab. Litig.*, 822 F.3d 125, 133 n.7 (3d Cir. 2016). Where the factual allegations in a complaint contradict a document attached to or integral to the complaint, the document controls. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d. Cir. 1994).

### B.    Patent Infringement

"It is well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show [that] the presence of every element or its substantial equivalent in the accused device." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991) (internal quotations and ellipses omitted). "Direct infringement" is set out in 35 U.S.C. § 271(a) and refers to the actual act(s) of making, using, selling, offering to sell and/or importing a patented invention. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993). "Indirect infringement" is spelled out in 35 U.S.C. §§ 271 (b) (inducement) and (c) (contributory infringement). *Id*. at 774. A party cannot be held liable for indirect infringement—either inducement or contributory infringement—without a finding of direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014); *Joy Techs.*, 6 F.3d at 774; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006).

#### 1.    Literal Infringement

"Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). If the accused product lacks even a single claim element, there is no literal infringement. *Id*.

#### 2.    Doctrine of Equivalents

"Under the doctrine of equivalents, 'a product or process that does not literally infringe

7

upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *Eagle*, 958 F.3d at 1175 (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997)). "The central question for infringement under the doctrine of equivalents is whether 'the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention.'" *Id.* (quoting *Warner-Jenkinson*, 520 U.S. at 40).

### 3.    Disclosure-Dedication Doctrine

"The disclosure-dedication doctrine bars application of the doctrine of equivalents." *Id*. Under the disclosure-dedication rule, subject matter disclosed in a patent's specification, but not claimed, is considered dedicated to the public. *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1051 (Fed. Cir. 2002). "By preventing a patentee from recapturing unclaimed subject matter, the disclosure-dedication doctrine reinforces the primacy of the claims in defining the scope of the patentee's exclusive right." *Eagle*, 985 F.3d at 1175 (internal quotations omitted). "The application of the disclosure-dedication doctrine is a question of law." *Id*. at 1177.

"The disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed[,]" *PSC Comput. Prods. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004), and the "unclaimed subject matter must have been identified by the patentee as an alternative to a claim limitation," *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005). "[I]f one of ordinary skill in the art can understand the unclaimed disclosed teaching upon reading the written description, the alternative matter disclosed has been dedicated to the public." *PSC Comput.*, 355 F.3d at 1360.

## II.  APOTEX IS ENTITLED TO PARTIAL JUDGMENT OF NON-INFRINGEMENT ON THE PLEADINGS

In the SOBEDEX patent counts, Axsome alleges (1) that Apotex's submission of its ANDA constitutes infringement of the SOBEDEX patents (35 U.S.C. § 271(e)(2)(A)); and (2) that, upon approval of its ANDA, Apotex will directly (35 U.S.C. § 271(a)) and indirectly (both inducement (35 U.S.C. § 271(b)) and contributory (35 U.S.C. § 271(c))) infringe the SOBEDEX patents.[5]    But Axsome has not alleged, and cannot allege, any plausible facts supporting infringement.

### A.  Axsome's Conclusory Allegations Are Not Entitled to the Assumption of Truth

"Under the pleading regime established by [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)], a court reviewing the sufficiency of a complaint must…identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Connelly v. Lane  Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

The SOBEDEX patent counts are replete with conclusory, boilerplate allegations that merely track the elements of direct and indirect infringement.  For example, Count I, which alleges infringement of the '075 patent, alleges the following in pertinent part:

> 97. Apotex's submission of its ANDA to engage in the commercial manufacture, use, offer for sale, sale, or importation into the United States of Apotex's Proposed Product, prior to the expiration of the '075 patent, constitutes infringement of one or more of the claims of that patent under 35 U.S.C. § 271(e)(2)(A), including at least claim 1.

---

[5] ECF No. 1, Compl. at SBEβCD patent counts.  With respect to Axsome's § 271(e)(2)(A) allegations, as the Federal Circuit has explained, "a district court's inquiry in a suit brought under § 271(e)(2) is the same as it is in any other infringement suit, *viz.*, whether the patent in question is 'invalid or will not be infringed by the manufacturer, use, or sale of the drug for which the [ANDA] is submitted.'"  *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997) (emphasis omitted).

9

…

99.  Unless enjoined by this Court, upon FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '075 patent under 35 U.S.C. § 271(a), including at least claim 1, by making, using, offering to sell, selling, and/or importing Apotex's Proposed Product in the United States.

100.  Unless enjoined by this Court, upon FDA approval of Apotex's ANDA, Apotex will induce infringement of one or more claims of the '075 patent under 35 U.S.C. § 271(b), including at least claim 1, by making, using, offering to sell, selling, and/or importing Apotex's Proposed Product in the United States. On information and belief, upon FDA approval of Apotex's ANDA, Apotex will intentionally encourage acts of direct infringement with knowledge of the '075 patent and knowledge that its acts are encouraging infringement.

101.  Unless enjoined by this Court, upon FDA approval of Apotex's ANDA, Apotex will contributorily infringe one or more claims of the '075 patent under 35 U.S.C. § 271(c), including at least claim 1, by making, using, offering to sell, selling, and/or importing Apotex's Proposed Product in the United States. On information and belief, Apotex knew and knows that Apotex's Proposed Product is designed for a use that infringes one or more claims of the '075 patent, and Apotex's Proposed Product lacks a substantial non-infringing use.

ECF No. 1, Compl. ¶¶ 97, 99-101.  These allegations merely recite the elements of infringement under § 271(e)(2)(A) (¶ 97 (ANDA submission)), § 271(a) (¶ 99 (direct infringement)), § 271(b) (¶ 100 (inducement)), and § 271(c) (¶ 101 (contributory infringement)), and case law interpreting those provisions.  *See Glaxo*, 110 F.3d at 1569; *Joy Techs.*, 6 F.3d at 773; *DSU*, 471 F.3d at 1303-05.

The bare bones SOBEDEX patent counts set forth in the Complaint do not meet basic pleading standards.  "Mere restatements of the elements of a claim are not entitled to the assumption of truth," *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (internal quotations and editorial marks omitted), and this Court is to "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," *James v. Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

10

Stripped of their conclusory allegations, the SOBEDEX patent counts fail to plausibly allege infringement.

**B.    Apotex Does Not and Will Not Infringe the SOBEDEX Patents**

**1.    No Direct Infringement**

Even if Axsome's conclusory allegations are considered, Apotex's ANDA—upon which Axsome's infringement claims are based[6]—and the SOBEDEX patents render those allegations implausible, requiring dismissal of the SOBEDEX patent counts.  Because the factual allegations in the SOBEDEX patent counts contradict Apotex's ANDA and the SOBEDEX patents themselves, those allegations must be disregarded.  *ALA*, 29 F.3d at 859 n.8.

**2.    No Literal Infringement**

As explained above (*supra* at 6-7), all of the claims of the SOBEDEX patents require pharmaceutical dosage forms or combinations of meloxicam administered (or complexed) with SOBEDEX.  There can be no dispute that Apotex's ANDA product does not literally contain SOBEDEX.  *See* ECF No. 12-1, Answer Ex. A, Apotex's ANDA § 3.2.P.1, Description and

---

[6] This Court may consider Apotex's ANDA in connection with the instant Rule 12 Motion because (1) Apotex's ANDA is "integral to or explicitly relied upon in the complaint," *Burlington*, 114 F.3d at 1426 (emphasis and internal quotations omitted) (*see* ECF No. 1, Compl. at SBEβCD patent counts); (2) "undisputedly authentic" copies of relevant portions of Apotex's ANDA are "attache[d] as…exhibit[s] to" the instant Rule 12 Motion, *In re Asbestos*, 822 F.3d at 133 n.7 (internal quotations omitted) (*see* Shannon Decl. Ex. F); and (3) relevant portions of Apotex's ANDA are attached to Apotex's Answer, *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008) ("pleadings and exhibits thereto" may be considered in connection with a Rule 12(c) motion) (*see* ECF No. 12-1, Apotex's Answer Ex. A).  *See also AstraZeneca Pharm. LP v. Apotex Corp.*, 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012) (rejecting patent owner appellant's complaint that "the district court committed legal error by considering" "[a]ppellees' ANDA filings" in connection with Rule 12 motion, noting that appellant's "complaints referenced and relied on [a]ppellees' FDA filings," rendering the district court's reliance on them proper under *Burlington*); *Par Pharm., Inc. v. Luitpold Pharm., Inc.*, 16-cv-02290 (WHW) (CLW), 2017 WL 452003, at *1-*6 (D.N.J. Feb. 1, 2017) (relying on patents-in-suit, their file histories, and moving defendant's ANDA in connection with Rule 12(c) motion); *In re Bendamustine Cosol. Cases*, C.A. No. 13-2046-GMS, 2015 WL 1951399, at *1 (D. Del. Apr. 29, 2015) (same).

11

Composition of the Drug Product (Table 4).    Thus, neither Apotex nor anyone using Apotex's ANDA product will literally infringe any claim of the SOBEDEX patents, and Axsome has not alleged and cannot allege any plausible facts otherwise.  *See* ECF No. 1, Compl. at SOBEDEX patent counts; *V-Formation*, 401 F.3d at 1312 ("Literal infringement requires that each and every limitation set forth in a claim appear in an accused product.").

### 3.    The Disclosure-Dedication Doctrine Bars Axsome's Infringement Claims under the Doctrine of Equivalents



12



Axsome is thus foreclosed from using the doctrine of equivalents to accuse Apotex's ANDA product of infringement under the doctrine of equivalents.

The facts here are materially indistinguishable from those in *Eagle*, a recent Federal Circuit disclosure-dedication case.  In *Eagle*, the asserted patent claim recited, in relevant part:

A non-aqueous liquid composition comprising:

bendamustine, or a pharmaceutically acceptable salt thereof;

***a pharmaceutically acceptable fluid*** comprising a mixture of polyethylene glycol and propylene glycol, wherein the ratio of polyethylene glycol to propylene glycol in the pharmaceutically acceptable fluid is from about 95:5 to about 50:50; and

a stabilizing amount of an antioxidant[.]

*Eagle*, 958 F.3d at 1173 (emphasis in original).  The defendant ANDA-filer substituted ethanol in the fluid of the accused composition for propylene glycol, and ethanol was repeatedly disclosed in the specification of the patent-in-suit as suitable alternative to propylene glycol.  *Id*. at 1173-74; *id*. at 1174 (specification:    "the bendamustine-containing compositions include a) a ***pharmaceutically acceptable fluid*** which contains one or more of propylene glycol, ***ethanol***, polyethylene glycol, benzyl alcohol and glycofurol" (emphasis in original)).  That the accused composition did not literally infringe was not in dispute; the only infringement issue was whether

13

the plaintiff patent owner could invoke the doctrine of equivalents to capture the accused composition. *Id*. at 1173-74.

The district court in *Eagle* granted the defendant's Rule 12(c) motion for judgment of non-infringement on the pleadings based on the disclosure-dedication doctrine, finding that "the written description of the asserted patents unambiguously and repeatedly identifies ethanol as an alternative to propylene glycol," and rejecting attempts by the plaintiff patent owner to "manufacture a factual dispute." *Id*. at 1174 (internal quotations and brackets omitted). On appeal, the Federal Circuit affirmed, rejecting an argument from the patent owner that the specification's disclosure of ethanol as an alternative to propylene glycol related only to an unclaimed embodiment (chloride salt compositions) and therefore did not dedicate ethanol to the public in connection with the claimed antioxidant compositions. *Id*. at 1175-77. The court also rejected the patent owner's argument that the disclosure-dedication defense raised a fact issue that that should not have been resolved at the pleadings stage, noting that "the application of the disclosure-dedication doctrine is a question of law" and that expert testimony was unnecessary where "the only reasonable reference that can be made from the patent disclosures is that a skilled artisan would understand the patents to disclose ethanol as an alternative to the claimed [propylene glycol]." *Id*. at 1177-78; *see also In re Bendamustine*, 2015 WL 1951399, at \*1-\*2 (defendants' Rule 12(c) motion granted based on the disclosure-dedication doctrine where asserted patents claimed compositions/preparations that included tertiary-butyl alcohol ("TBA"), but defendants' ANDA products omitted TBA and used solvents expressly disclosed in the specifications of the asserted patents as being suitable alternatives to TBA but were never claimed); *Morphosys AG v. Jannsen Biotech, Inc.*, 358 F. Supp. 3d 354, 362 (D. Del. 2019) (applying disclosure-dedication doctrine to bar doctrine of equivalents claims where the patent claims at issue required "human"

14

antibodies, but the accused products used "humanized" antibodies, which were disclosed in the asserted patents as being a suitable alternative to "human" antibodies but were never claimed).

Here, as explained above, the only reasonable inference from the specification is that a skilled artisan would understand ██████████████████████████████ Because ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ as a matter of law and Axsome is foreclosed from capturing Apotex's ANDA product under the doctrine of equivalents. Thus, Axsome's Complaint fails to state a plausible claim for infringement of the SOBEDEX patents under 35 U.S.C. §§ 271(a) (direct infringement) and Apotex is entitled to judgment of non-infringement on those claims.

### C.    No Indirect Infringement

Axsome's claims for infringement under 35 U.S.C. §§ 271(b) (inducement) and (c) (contributory infringement) also fail because, as a matter of law, there can be no indirect infringement of a patent claim without a finding of a direct infringement. *Limelight*, 134 S. Ct. at 2117; *Joy Techs.*, 6 F.3d at 774; *DSU*, 471 F.3d at 1303.

### D.    No § 271(e)(2)(A) Infringement

As the Federal Circuit has made clear, an infringement inquiry under § 271(e)(2)(A) tracks the traditional infringement inquiries under 35 U.S.C. §§ 271(a)-(c). *See, e.g., Glaxo*, 110 F.3d at 1569. Thus, because, upon approval, Apotex's ANDA product will not infringe the SOBEDEX patents under §§ 271(a)-(c), as explained above, Axsome has failed to state a plausible claim for

15

infringement of the SOBEDEX patents § 271(e)(2)(A) and Apotex is entitled to judgment of non-infringement of the SOBEDEX patent counts as a matter of law.

## III.    POLICY CONSIDERATIONS STRONGLY SUPPORT EARLY CONSIDERATION OF THE INSTANT MOTION

The vast majority—nearly 85%—of approved drug products have four or fewer patents listed for them in the Orange Book.  Shannon Decl. Ex. A, Jonathan J. Darrow & Daniel T.C. Mai, *An Orange Book Landscape:  Drugs, Patents, and Generic Competition*, 77 FOOD & DRUG L.J. 51, 56-57 (2022).[7]  As of four years ago, only one brand drug had more than 35 patents listed in the Orange Book (*id*. at 57), and none had more than 65 patents listed (*id*.), putting this lawsuit—where the plaintiff brand drug company (Axsome) alleges infringement of ***all 75 patents*** listed for the brand product (Symbravo)—in unchartered territory.

The sheer size and scope of this lawsuit jeopardizes Apotex's attempt to bring to market a lower-priced, generic alternative to Symbravo.  The purpose of the Hatch-Waxman Act is "to speed the introduction of low-cost generic drugs to market."  *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 132 S.Ct. 1670, 1676 (2012).   In Hatch-Waxman, Congress introduced a streamlined pathway for regulatory approval of generic drugs that "allow[ed] generic drugs to reach the market expeditiously and with less up-front investment[; a]s a consequence, generic drugs could be offered at substantially lower prices than their corresponding brand-name products."  Shannon Decl. Ex. B, Aaron S. Kesselheim and Johnathan J. Darrow, *Hatch-Waxman Turns 30:  Do We Need a Re-Designed Approach for the Modern Era?*, 15 YALE J. HEALTH POLY'Y, L. & ETHICS 293, 309-310 (2015); *see also Caraco*, 132 S.Ct. at 1676-68 (summarizing the Hatch-Waxman

---

[7] "A court may take judicial notice of a 'fact that is not subject to reasonable dispute.'" *McMahon v. Gen'l Dynamics Corp.*, 933 F. Supp. 2d 682, (D.N.J. 2013) (quoting FED. R. EVID. 201(b)). "[C]ourts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

process).   Yet Axsome's deliberate strategy of (a) serially filing scores of continuation applications[8] with the PTO claiming slightly different aspects of Symbravo, (b) listing all 75 patents to issue from those applications in the Orange Book (forcing Apotex to address all of them, *see* 21 U.S.C. §§ 355(j)(2)(A)(vii)-(viii) and (j)(2)(B)) and then (c) suing Apotex for alleged infringement of all 75 of those patents, threatens to upend the Hatch-Waxman scheme by subjecting Apotex to a Kafkaesque and cost-prohibitive nightmare requiring it to expend enormous amounts of money and resources to defend against what can only be described as a "patent thicket" that Axsome has set up to guard its monopoly in the meloxicam+rizatriptan tablet market.[9]

As the FDA has recognized, "the existence of multiple patents increases litigation burdens and potentially delays the approval of generics."  Shannon Decl. Ex. D, 9/10/21 Ltr. from FDA to PTO at 3.  In this particular case, the burdens are self-evident and enormous.  The 75 patents-in-suit contain a staggering ***1,856 claims***.  *See* ECF Nos. 1-1 – 1-75, Compl. Exs. 1-75, patents-in-

---

[8] *See Transco Prods. Inc. v. Performance Cont., Inc.*, 38 F.3d 351, 555-57 (Fed. Cir. 1994) (discussing continuation practice at the USPTO); *see also, e.g.*, ECF No. 1-61, Compl. Ex. 61, U.S. Patent No. 11,602,563 at Related U.S. Application Data (identifying continuation applications in the priority chain for the subject patent).

[9] Both Congress and the Executive branch have recognized the anticompetitive nature of patent thickets in the Hatch-Waxman context. *See, e.g.*, Shannon Decl. Ex. C, 8/28/23 Ltr. from Senator Elizabeth Warren and Rep. Pramila Jaypal to FDA at 4-5 ("Brand-name pharmaceutical companies have attempted to accumulate an excessive number of patents or delay filing their patents in an effort to employ anti-competitive business practices such as building 'patent thickets,' 'product-hopping,' or 'evergreening.'"); *id.* at Ex. D, 9/10/21 Ltr. from FDA to PTO at 3 ("Some companies have adopted the practice of filing 'continuation' patent applications, which may allow the filer to obtain follow-on patents directed to inventions disclosed in earlier patents.  This practice can allow companies to create 'patent thickets' by obtaining multiple patents on different aspects of the same product within a patent application….the existence of multiple patents increases litigation burdens and potentially delays the approval of generics."); *id.* at Ex. E, Dkt. No. PTO-P-2024-0003, Terminal Disclaimer Practice to Obviate Nonstatutory Double Patenting, 7/9/24 Comment of the United States Federal Trade Commission at 2  ("[T]he Commission has long been mindful of the potential anticompetitive effects of patent thickets and shares bipartisan Congressional concerns that patent thickets erected by incumbents can delay and frustrate the entry of new biosimilars and generic drugs, increasing prescription drug costs and limiting patients' access to more affordable options.").

17

suit at claims.  This District's "Local Patent Rule 3.6 requires *ultra* early disclosure of…invalidity contentions for patent cases arising under the Hatch-Waxman Act," *Sanofi-Aventis v. Barr Labs., Inc.*, 598 F. Supp. 2d 632, 637 (D.N.J. 2009) (emphasis in original), and, "pursuant to [Local Patent] Rule 3.3, invalidity contentions must be detailed and specific," *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, C.A. No. 12-3289 (PGS)(LHG), 2014 WL 997532, at *6 (D.N.J. Jan. 6, 2014), and include "a chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found," Local Patent Rule 3.3(c).  Requiring Apotex to carry this out for each of the 1,856 claims of the 75 asserted patents—with each having multiple limitations—will not only be incredibly disproportional to the needs of this case but, more importantly, will require Apotex to spend more money and resources on written discovery in this case than it ever has in any other Hatch-Waxman case it has been involved with.[10]  This will have deleterious effects on Apotex's litigation budget and strategy down the line, with things getting even worse for Apotex if it is required to prepare and serve expert reports addressing over 1,800 patent claims. The unprecedented number of patents in this case will likely translate into an enormous amount of claim construction and discovery disputes that the Court will need to referee.

Simply put, without an early and substantial narrowing of the scope of Axsome's case, this case risks becoming an unwieldy, cost-prohibitive matter instead of a fair inquiry into whether legitimate patent rights are being violated.  Apotex respectfully submits that judicial economy and conservation of party resource considerations strongly warrant early consideration of the instant Motion.

---

[10] Even if the number of asserted claims were halved, Apotex would still be required to prepare and served detailed invalidity contentions for over 900 patent claims, a cost-prohibitive task grossly disproportionate to the needs of the case.

18

## CONCLUSION

Apotex's Rule 12(c) Motion seeks to narrow the scope of the case by dismissing *59 counts*—the SOBEDEX patent counts—from Axsome's Complaint asserting patents for which Axsome has not pleaded and cannot plead plausible claims for infringement.    There can be no dispute that Apotex's ANDA product and its use will not literally infringe the SOBEDEX patents.   Axsome is further prevented from relying on the doctrine of equivalents to accuse Apotex's ANDA product by the disclosure-dedication doctrine.   Apotex respectfully requests that the Court enter a judgment of non-infringement on the SOBEDEX patents counts.

Dated:  March 10, 2026                                            Respectfully submitted,

                                                                 SAIBER LLC
                                                                 *Attorneys for Defendant Apotex Inc*

                                                                 s/    s/ Arnold B. Calmann
*Of Counsel:*                                                         Arnold B. Calmann
                                                                     abc@saiber.com
Andrew M. Alul (aalul@taftlaw.com)                                   Katherine A. Escanlar
Richard T. Ruzich (rruzich@taftlaw.com)                              kescanlar@saiber.com
Roshan P. Shrestha, Ph.D.                                            7 Giralda Farms, Suite 360
(rshrestha@taftlaw.com)                                              Madison, New Jersey 07940
Luke T. Shannon (lshannon@taftlaw.com)                               973.622.333
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
Telephone: 312-527-4000

19