Charles M. Lizza
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza, Suite 1520
Newark, NJ 07102-5426
(973) 286-6700
clizza@saul.com

*Attorneys for Plaintiff*
*Axsome Therapeutics, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AXSOME THERAPEUTICS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**APOTEX INC.,**<br><br>**Defendant.** | **Civil Action No. 2:25-cv-16038-MEF-AME**<br><br>Return Date: May 18, 2026<br><br>Oral Argument Requested<br><br>████████████<br><br>**(Filed Electronically)** |

## PLAINTIFF AXSOME THERAPEUTICS, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................................... 2

      A.   Actions Giving Rise to This Suit ................................................................... 2

      B.   The SOBEDEX Patents ................................................................................. 3

      C.   The Prosecution History of the '075 Patent, ████████████████ .................... 3

III.  LEGAL STANDARD ................................................................................................ 5

      A.   Rule 12(c) ...................................................................................................... 5

      B.   Disclosure-Dedication Doctrine ................................................................... 8

IV.   ARGUMENT ............................................................................................................ 10

      A.   The Complaint States Plausible Claims for Infringement ............................ 10

      B.   The Disclosure-Dedication Doctrine Is Inapplicable Because Axsome ████████
           ████████████ ........................................................................................... 12

           1.   Claiming the Alleged Equivalent Defeats the Disclosure-Dedication Doctrine .......... 13

           2.   ████████████████████████████████████████ ............................... 16

           3.   In the Alternative, the *Johnson* Rule Is Irreconcilable with Supreme Court Precedent
                and Should Not Bar Axsome's Doctrine of Equivalents Claims ......................................... 19

      C.   Even If the Disclosure-Dedication Doctrine Were Applicable, Judgment on the Pleadings
           Is Inappropriate ...................................................................................................... 20

      D.   Apotex's Policy Argument Is Irrelevant and Has Already Been Rejected ..................... 21

V.    CONCLUSION ........................................................................................................... 22

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
  119 F.4th 27 (Fed. Cir. 2024) ...................................................................................7, 12

*Allergan, Inc. v. Mankind Pharma Ltd.*,
  No. 23-272, 2024 WL 1931969 (D. Del. Jan. 4, 2024) .............................................10, 21, 22

*Amgen Inc. v. Alkem Lab'ys Ltd.*,
  No. 17-815, 2017 WL 6493150 (D. Del. Dec. 19, 2017) ....................................................10, 20

*Belcher Pharms., LLC v. Int'l Medication Sys., Ltd.*,
  379 F. Supp. 3d 326 (D. Del. 2019)........................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................6

*In re Bendamustine Consol. Cases*,
  No. 13-2046, 2015 WL 1951399 (D. Del. Apr. 29, 2015).........................................................18

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ..............................................................................................6

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
  707 F.3d 1342 (Fed. Cir. 2013)............................................................................................6

*Bristol-Myers Squibb Co. v. Xspray Pharma AB*,
  No. 22-964 (RMB) (MJS), 2023 WL 3354261 (D.N.J. Apr. 25, 2023) ...............6, 7, 8, 11, 12

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)...............................................................................................4

*Celgene Corp. v. Sun Pharma Glob. FZE*,
  No. 19-10099 (SDW) (LDW), 2020 WL 1921700 (D.N.J. Apr. 6, 2020).....................7, 11, 12

*Corcept Therapeutics, Inc. v. Teva Pharms. USA, Inc.*,
  No. 18-3632 (SDW) (CLW), 2018 WL 5263278 (D.N.J. Oct. 23, 2018) ....................8, 11, 12

*Eagle Pharms. Inc. v. Slayback Pharma LLC*,
  958 F.3d 1171 (Fed. Cir. 2020)...........................................................................................18, 21

*Eli Lilly & Co. v. Hospira, Inc.*,
  933 F.3d 1320 (Fed. Cir. 2019)...........................................................................................8, 9, 20

*Encore Dermatology Inc. v. Glenmark Pharms. Ltd.*,
No. 20-02509 (KM) (ESK), 2020 WL 7586958 (D.N.J. Dec. 22, 2020) ...............................7

*In re Gibbs*,
437 F.2d 486 (CCPA 1971) ........................................................................................20

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
336 U.S. 271 (1949) [*Graver I*] ................................................................................13

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
339 U.S. 605 (1950) [*Graver II*].........................................................6, 9, 13, 14, 19

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
222 F.3d 951 (Fed. Cir. 2000)....................................................................................17

*Int'l Rectifier Corp. v. IXYS Corp.*,
361 F.3d 1363 (Fed. Cir. 2004).....................................................................................6

*Janssen Prods., L.P. v. EVER Valinject GmbH*,
No. 24-7319, 2025 WL 639380 (N.D. Ill. Feb. 27, 2025) ..................................10, 21

*Janssen Prods., L.P. v. Lupin Ltd.*,
No. 10-cv-05954 (WHW), 2014 U.S. Dist. LEXIS 155248 (D.N.J. Mar. 12,
2014) ....................................................................................................15, 16, 17

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
285 F.3d 1046 (Fed. Cir. 2002).......................................................8, 9, 14, 15, 19, 20

*London v. Carson Pirie Scott & Co.*,
946 F.2d 1534 (Fed. Cir. 1991)....................................................................................7

*Maxwell v. J. Baker, Inc.*,
86 F.3d 1098 (Fed. Cir. 1996)......................................................................................9

*MorphoSys AG v. Janssen Biotech, Inc.*,
358 F. Supp. 3d 354 (D. Del. 2019)...........................................................................18

*Par Pharm., Inc. v. Luitpold Pharms., Inc.*,
No. 16-02290 (WHW) (CLW), 2017 WL 452003 (D.N.J. Feb. 2, 2017) ...................4

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005).............................................................................9, 20

*PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*,
355 F.3d 1353 (Fed. Cir. 2004).....................................................................................9

*Rayner Surgical Inc. v. Somerset Therapeutics, LLC*,
No. 24-09017 (GC) (JBD), 2026 WL 905689 (D.N.J. Apr. 2, 2026)...............7, 11, 12

iii

*Revell v. Port Auth. of New York, New Jersey*,
    598 F.3d 128 (3d Cir. 2010)..................................................................................6

*Rosby v. Stoughton Trailers, Inc.*,
    No. 95-0511, 2003 WL 22232802 (N.D. Ill. Sept. 26, 2003) ...................................16

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008)..............................................................................6, 7

*Tolmar Therapeutics, Inc. v. Foresee Pharms. Co.*,
    No. 21-15782 (EP) (CLW), 2022 WL 13858026 (D.N.J. Oct. 24, 2022) ................10, 21

*Toro Co. v. White Consol. Indus., Inc.*,
    383 F.3d 1326 (Fed. Cir. 2004).........................................................................8, 9

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)...........................................................................................19

## Statutes

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ...............................................................................11

35 U.S.C. § 271(a) ............................................................................................8, 12

35 U.S.C. § 271(b) ...........................................................................................8, 12

35 U.S.C. § 271(c) ...............................................................................................8

35 U.S.C. § 271(e) .........................................................................................8, 11

35 U.S.C. § 271(e)(2).........................................................................................3

35 U.S.C. § 271(e)(2)(A) .....................................................................................11

## Other Authorities

37 C.F.R. § 1.142(a).............................................................................................4

37 C.F.R. § 1.142(b) ............................................................................................5

Rule 12(b)(6)................................................................................................6, 7

Rule 12(c)..............................................................................................1, 5, 10, 21, 22

iv

**TABLE OF ABBREVIATIONS**

| Abbreviations | Definitions |
|---|---|
| ANDA | Abbreviated New Drug Application |
| Apotex's ANDA | ANDA No. 220803 |
| Apotex's Proposed Product | The proposed generic version of Symbravo® defined in ANDA No. 220803, for which Apotex seeks FDA approval |
| ███████ | ██████████████████ |
| SBEβCD | sulfobutyl ether β-cyclodextrin |
| SOBEDEX patents | Apotex's motion is directed towards what it calls the "SOBEDEX patents," i.e., U.S. Pat. Nos. 9,821,075 (the "'075 patent"); 10,029,010; 10,058,614 (the "'614 patent"); 10,137,131; 10,195,278; 10,265,324; 10,363,312; 10,471,014; 10,471,069; 10,512,692; 10,512,693; 10,517,950; 10,532,101; 10,537,642; 10,561,664; 10,583,144; 10,653,777; 10,688,185; 10,695,429; 10,695,430; 10,702,535; 10,702,602; 10,722,583; 10,729,696; 10,729,697; 10,729,773; 10,758,617; 10,758,618; 10,780,165; 10,780,166; 10,799,588; 10,821,181; 10,821,182; 10,894,053; 10,905,693; 10,918,722; 10,933,136; 10,933,137; 10,940,153; 11,013,805; 11,013,806; 11,020,483; 11,045,549; 11,135,295; 11,207,328; 11,219,626; 11,285,213; 11,426,414; 11,504,429; 11,607,456; 11,617,755; 11,617,791; 11,759,522; 11,801,250; 11,806,354; 12,128,052. |
| Patent-in-suit | The patents-in-suit consist of the SOBEDEX patents as well as U.S. Pat. Nos. 10,369,224; 10,426,839 (the "'839 patent"); 10,463,736; 10,688,102; 10,987,358; 11,331,323; 11,369,684; 11,471,464; 11,471,465; 11,510,927; 11,571,428; 11,602,563; 11,617,756; 11,628,173; 11,712,441; 11,738,085; 11,826,370; 11,865,117 (the "'117 patent"); 12,370,196. |

v

## I.    INTRODUCTION

Defendant Apotex Inc. ("Apotex" or "Defendant") has moved against Plaintiff Axsome Therapeutics, Inc. ("Axsome" or "Plaintiff") for partial judgment on the pleadings of non-infringement of the SOBEDEX patents, ███████████████████████████████

███████████████████████████████████ Specifically, Apotex's motion attempts to preclude Axsome from relying on the doctrine of equivalents, but, as set forth further below, Apotex cannot meet the standard for judgment on the pleadings, and its motion should be denied.

*First*, Axsome's complaint satisfies the pleading standards for infringement in a Hatch-Waxman case.  Contrary to Apotex's reliance on non-Hatch-Waxman cases to assert that Axsome's infringement allegations are "conclusory," Axsome's complaint includes well-pled factual allegations that Apotex's Proposed Product infringes the SOBEDEX patents under established Hatch-Waxman law.  On a Rule 12(c) motion, this Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in Axsome's favor. Therefore, Apotex's first argument fails.

*Second*, Apotex's argument as to the so-called "disclosure-dedication" doctrine ignores the prosecution history of the SOBEDEX patents, which removes the patents from the scope of the doctrine.  The disclosure-dedication doctrine applies only when a patent drafter ***discloses but "declines to claim"*** certain subject matter.  Under those circumstances, the disclosed but unclaimed subject matter would be considered dedicated to the public.  Apotex's motion entirely ignores, however, that Axsome ***did not "decline to claim"*** ██████████████████

███. Instead, Axsome ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

1

what matters is that a person of ordinary skill in the art ("POSA") was on notice . Additionally, indicating that the equivalent was never dedicated to the public.  Therefore, the disclosure-dedication doctrine does not apply to these facts, and Apotex's motion should be denied on this basis alone.

*Third*, Apotex's motion also fails because genuine issues of material fact exist as to whether, based on the disclosure and prosecution histories of the SOBEDEX patents, a POSA would have in the context of ***each*** of the claimed inventions.  Apotex's motion makes only conclusory assertions that Whether a POSA would have recognized in the specific claimed contexts requires evaluation of disputed facts, including by experts.  On this independent basis, Apotex's motion should be denied.

*Finally*, the policy arguments Apotex advances are irrelevant and, in any event, have already been presented to the Court and rejected at the March 26, 2026 scheduling conference. Apotex's attempt to relitigate these arguments here is improper.

Apotex's motion should be denied.

## II.    STATEMENT OF FACTS

### A.    Actions Giving Rise to This Suit

This patent infringement suit between Axsome and Apotex arises from Apotex's filing of an ANDA with the U.S. Food and Drug Administration ("FDA").  Axsome holds a New Drug Application for meloxicam and rizatriptan tablets, which is sold under the trade name Symbravo®.  Symbravo® is indicated for the acute treatment of migraine with or without aura in adults, and was approved by the FDA on January 30, 2025.  Through the submission of Apotex's ANDA, Apotex seeks approval from the FDA to engage in the commercial manufacture, use, or

sale of Apotex's Proposed Product before the expiration of the patents-in-suit, publicly-listed in the Orange Book.  Axsome commenced this action following receipt of a Paragraph IV notice letter from Apotex, in which Apotex stated that it sought to commercially market a generic version of Axsome's Symbravo® drug product before the expiration of the patents-in-suit and in which Apotex alleged that the claims of the patents-in-suit are invalid or will not be infringed by the activities described in Apotex's ANDA.  Apotex's ANDA submission constitutes infringement of one or more claims of each of the patents-in-suit under 35 U.S.C. § 271(e)(2).

### B.     The SOBEDEX Patents

All of the SOBEDEX patents claim dosage forms, or methods of treatment comprising administering dosage forms, that comprise meloxicam and SBEβCD, which belongs to a class of compounds known as cyclodextrins.  Cyclodextrins are molecules that can, in certain contexts, "help to increase bioavailability of other molecules," such as some small-molecule drugs.  '075 patent (D.I. 1, Ex. 1), 1:45-46.  While all cyclodextrins share a general structure, they differ in their substitutions (e.g., the "sulfobutyl ether" group substitutions of **SBE**βCD ████

████████████████████████████    *See, e.g.*, *id.* at 4:32-5:29 (providing a list of 64 cyclodextrins).  Axsome contends that t█████████████████████████████

███████████████████████████████ under the doctrine of equivalents.

### C.     The Prosecution History of the '075 Patent, ████████████████████

The first patent in the SOBEDEX patent family is the '075 patent, which issued on November 21, 2017 from U.S. Patent Application No. 15/132,130 (the "'130 application").  As originally filed, ██████████████████████████████████████████

---

[1] "Ex. __" refers to the exhibits to the Declaration of Lourania M. Oliver submitted herewith.

3

████████████████████ The '130 application also published as U.S. Publication No. 2016/0228576 A1 (the "'576 publication") on August 11, 2016.  *See* Ex. 2.  ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

████████████████████████████████████████████████

██████████████████

████████████████████████████████████████████████████████

████████████████████████

During prosecution of the '130 application, the examiner issued a restriction requirement, requiring Axsome to elect "each component (a specific cyclodextrin compound (e.g. those recited in Claim 2), a carbonate or a bicarbonate) in a single dosage form specie in combination with meloxicam." Ex. 3 (Restriction Requirement) at 6.  The examiner required species election because "[t]he species are independent or distinct." *Id.*; *see also* 37 C.F.R. § 1.142(a) ("If two or more independent and distinct inventions are claimed in a single application, the examiner in an Office action will require the applicant . . . to elect an invention to which the claims will be restricted.").  The examiner said the species are "defined by a unique set of physical and chemical properties," "prepared by a different method," and "not obvious variants of each other

---

[2] In deciding a motion for judgment on the pleadings, the Court "may not consider matters extraneous to the pleadings," but "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up).  "In a Hatch-Waxman action such as this, the Court may consider the file histories of the Patents-in-Suit" in deciding a motion for judgment on the pleadings. *Par Pharm., Inc. v. Luitpold Pharms., Inc.*, No. 16-02290 (WHW) (CLW), 2017 WL 452003, at *4 (D.N.J. Feb. 2, 2017).

based on the current record," thereby creating an "examination and search burden . . . for these patentably distinct dosage form species." Ex. 3 at 6-7.

In response to the restriction requirement, Axsome elected "[s]ulfobutyl ether β-cyclodextrin as the cyclodextrin." Ex. 4 (Response to Restriction Requirement). In response, the examiner acknowledged that the remaining claims were directed to "the cyclodextrin compound sulfobutyl ether β-cyclodextrin." Ex. 5 (Oct. 3, 2016 Non-Final Office Action) at 2. ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ *See* 37 C.F.R. § 1.142(b) ("Claims to the invention or inventions not elected, if not canceled, are nevertheless withdrawn from further consideration by the examiner by the election."). Ultimately, Axsome incorporated the remaining subject matter of claim 2 (i.e., the SBEβCD limitation) into claim 1, and the examiner allowed the application with claim 1 as recited in the '075 patent. *See* Ex. 6 (Notice of Allowance) at 5-6; Ex. 7 (Aug. 28, 2017 Claims) at 1. In later-filed applications, Axsome pursued and obtained patents directed towards "cyclodextrins" generally, ████████████

██████████████████████████████████████████████████████

██ Even today, the patent family including the SOBEDEX patents contains several pending patent applications.

III.    **LEGAL STANDARD**

A.      **Rule 12(c)**

On a Rule 12(c) motion, judgment is appropriate only if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted). The Court "view[s] the facts presented in the pleadings and the inferences to be drawn therefrom

5

in the light most favorable to the nonmoving party." *Id.* (citation omitted). Additionally, the Court "must accept the truth of all factual allegations in the complaint," because "[a] motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010).

A motion for judgment on the pleadings should be granted only if the complaint "fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bristol-Myers Squibb Co. v. Xspray Pharma AB*, No. 22-964 (RMB) (MJS), 2023 WL 3354261, at *3 (D.N.J. Apr. 25, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level, at the same time, specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id.* (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)) (cleaned up).

"Infringement, either literal or under the doctrine of equivalents, is a question of fact." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013). "A determination of infringement requires a two-step analysis. The court must determine (1) the scope and meaning of the patent claims asserted, and (2) how the properly construed claims compare to the allegedly infringing device." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004) (cleaned up). "Comparison of the claims to the accused device requires a factual determination that every claim limitation or its equivalent is found in the accused device." *Id.* "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950) [*Graver II*].

6

While true that "in order for a court to find infringement, the plaintiff must show [ ] the presence of every element or its substantial equivalent in the accused device," D.I. 37 ("Apotex Br.") at 7 (quoting *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991)), "[a] plaintiff is not required to plead infringement on an element-by-element basis," *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 42 (Fed. Cir. 2024) (cleaned up). "Instead, it is enough that a complaint place the alleged infringer on notice of what activity is being accused of infringement." *Id.* (cleaned up). "Non-infringement, even on the face of the pleadings, would require that the Patent's claims indisputably do not cover [Apotex's] generic product." *Encore Dermatology Inc. v. Glenmark Pharms. Ltd.*, No. 20-02509 (KM) (ESK), 2020 WL 7586958, at *3 (D.N.J. Dec. 22, 2020).

As applied to Hatch-Waxman cases, "when a plaintiff pleads an artificial or technical claim of patent infringement under the Hatch Waxman Act, the complaint 'complies with the requirements of *Iqbal* and *Twombly* as applied to [this] unique context.'" *Bristol-Myers Squibb*, 2023 WL 3354261, at *4 (quoting *Belcher Pharms., LLC v. Int'l Medication Sys., Ltd.*, 379 F. Supp. 3d 326, 332 (D. Del. 2019)). Thus, a plaintiff adequately pleads infringement "by alleging its interest in the patent, its receipt of the paragraph IV certification, the filing of the ANDA or NDA, and its contention that the defendant's proposed product will infringe." *Id.* (quoting *Belcher*, 379 F. Supp. 3d at 330-31); *see also Celgene Corp. v. Sun Pharma Glob. FZE*, No. 19-10099 (SDW) (LDW), 2020 WL 1921700, at *3 n.4 (D.N.J. Apr. 6, 2020) ("[T]he allegations contained within the Complaint are sufficient to withstand Defendants' Rule 12(b)(6) motion because they identify the ANDA and allege that the proposed ANDA products will infringe."); *Rayner Surgical Inc. v. Somerset Therapeutics, LLC*, No. 24-09017 (GC) (JBD), 2026 WL 905689, at *3 (D.N.J. Apr. 2, 2026) (denying motion for judgment on the pleadings because

7

"Plaintiffs' Complaint sufficiently pleads Plaintiffs' interest in the asserted patents, the filing of Defendant's ANDA, and Plaintiffs' contentions that Defendant's product will infringe Plaintiffs' patents"); *Corcept Therapeutics, Inc. v. Teva Pharms. USA, Inc.*, No. 18-3632 (SDW) (CLW), 2018 WL 5263278, at *3 (D.N.J. Oct. 23, 2018) (denying motion to dismiss because "Plaintiff satisfies [the] standard by alleging that it is the holder of the patents-in-suit and that Teva has infringed or will infringe on at least one claim in each of the patents-in-suit"). Such allegations "fairly put [a defendant] on notice of the claims asserted . . . and the grounds upon which they rest." *Bristol-Myers Squibb*, 2023 WL 3354261, at *4 (finding "the Amended Complaint states plausible claims of patent infringement," where infringement under §§ 271(a), (b), (c), and (e) was challenged).

### B.    Disclosure-Dedication Doctrine

Under the disclosure-dedication doctrine, a patentee's ability to rely on the doctrine of equivalents can be "precluded based on actions of the patentee during prosecution evincing . . . dedication of subject matter" to the public. *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1331 (Fed. Cir. 2004). Specifically, the disclosure-dedication doctrine can preclude reliance on the doctrine of equivalents "when a patent drafter discloses but ***declines to claim*** subject matter," because "this action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (emphasis added). "The reason for the doctrine is that members of the public reading a disclosure of particular subject matter are entitled, absent a claim to it, to assume that it is not patented and therefore dedicated to the public (unless, for example, claimed in a continuation or other application based on the disclosure)." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1334 (Fed. Cir. 2019).

As stated by Apotex, "[t]he disclosure must be of such specificity that [a POSA] could identify the subject matter that had been disclosed and not claimed" and "understand the unclaimed disclosed teaching upon reading the written description."  Apotex Br. at 8 (quoting *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)). Additionally, a POSA must be able to "come to the conclusion that the inventors have identified [the alleged equivalent] as an alternative [to the claim limitation]." *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005); *see also* Apotex Br. at 8 (stating that the "unclaimed subject matter must have been identified by the patentee as an alternative to a claim limitation" (quoting *Pfizer*, 429 F.3d at 1379)).

The disclosure-dedication doctrine "presents a question of law," just like prosecution history estoppel.  *Toro*, 383 F.3d at 1331.  However, the underlying issue before the Court is factual: whether a POSA "reading the specification and prosecution history, and interpreting the claims, would conclude that [the patentee], by failing to claim the alternate [system], dedicated the use of such systems to the public." *Johnson*, 285 F.3d at 1051 (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108 (Fed. Cir. 1996)); *see also Graver II*, 339 U.S. at 609 ("What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case.").  Thus, the disclosure-dedication doctrine implicates factual issues that require the Court to consider whether a POSA "can understand the unclaimed disclosed teaching," *Eli Lilly*, 933 F.3d at 1334, and recognize that the inventors disclosed it as an "alternative to a claim limitation," *Pfizer*, 429 F.3d at 1379, based on the context of the patent, including its specification, prosecution history, and claims.

Accordingly, because the disclosure-dedication doctrine relies upon a POSA's understanding of the specification, prosecution history, and claims, underlying factual disputes

9

can preclude judgment on the pleadings, particularly where the facts are "highly technical and hotly disputed by the parties." *Amgen Inc. v. Alkem Lab'ys Ltd.*, No. 17-815, 2017 WL 6493150, at *2 (D. Del. Dec. 19, 2017) (finding material disputes of fact regarding prosecution history estoppel precluding judgment on the pleadings, including the absence of "an understanding of which equivalents are in question and the equivalents of the listed binder excipients"); *see also Allergan, Inc. v. Mankind Pharma Ltd.*, No. 23-272, 2024 WL 1931969, at *5 (D. Del. Jan. 4, 2024), *report and recommendation adopted*, No. 23-272, 2024 WL 1931756 (D. Del. Jan. 29, 2024) ("Because this [disclosure-dedication doctrine] inquiry involves unresolved issues of fact regarding the understanding of a [POSA], I recommend that the court deny Mankind Pharma's motion for judgment on the pleadings."); *Janssen Prods., L.P. v. EVER Valinject GmbH*, No. 24-7319, 2025 WL 639380, at *16 (N.D. Ill. Feb. 27, 2025) (denying motion to dismiss because "it is premature to determine whether a [POSA] would recognize L-arginine as a disclosed alternative to disaccharides and trigger the disclosure-dedication rule"); *Tolmar Therapeutics, Inc. v. Foresee Pharms. Co.*, No. 21-15782 (EP) (CLW), 2022 WL 13858026, at *2 (D.N.J. Oct. 24, 2022) ("[T]he Court need not (and cannot) reach the disclosure-dedication issue prior to claim construction because the disclosure-dedication rule limits application of the doctrine of equivalents.").

## IV.    ARGUMENT

### A.    The Complaint States Plausible Claims for Infringement

Apotex first argues that the allegations set forth in the complaint are "conclusory," "do not meet basic pleading standards," and "fail to plausibly allege infringement." *See* Apotex Br. at 8-11.  But Apotex does not cite a single Hatch-Waxman case in which claims like those in Axsome's complaint were dismissed via a Rule 12(c) motion.  This is not surprising, as Axsome's allegations comply with well-settled Hatch-Waxman case law.

10

First, Axsome adequately pled that Apotex will infringe under 35 U.S.C. § 271(e)(2)(A). Axsome alleges that the patents-in-suit are "owned by Axsome" and that, "in connection with the filing of Apotex's ANDA," "Apotex provided a written certification to the FDA as called for by Section 505 of the FFDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ('Apotex's Paragraph IV Certification'), alleging that the claims of the patents-in-suit are invalid and/or will not be infringed by the activities described in Apotex's ANDA."  D.I. 1, ¶¶ 1, 92.  Axsome also alleges that Apotex sent written notice of Apotex's Notice Letter to Axsome providing that "Apotex filed an ANDA . . . seeking approval to engage in the commercial manufacture, use, offer for sale, sale, or importation into the United States of Apotex's Proposed Product before the expiration of certain patents listed in the Orange Book with respect to Symbravo®."  *Id.* ¶¶ 93-94. Axsome further alleges that, "following FDA approval of Apotex's ANDA, unless enjoined by the Court, Apotex will make, use, offer to sell, or sell Apotex's Proposed Product throughout the United States, or import such a generic product into the United States."  *Id.* ¶ 95.  These allegations meet the pleading requirements for § 271(e).  *Bristol-Myers Squibb*, 2023 WL 3354261, at *3-4; *Celgene*, 2020 WL 1921700, at *3 n.4; *Rayner Surgical*, 2026 WL 905689, at *3; *Corcept Therapeutics*, 2018 WL 5263278, at *3.

Second, Axsome adequately pled that Apotex will directly and indirectly infringe the SOBEDEX patents.  Not only did Axsome adequately plead the facts for an act of infringement under § 271(e), Axsome additionally pled that Apotex's Proposed Product is, on information and belief, a "generic version of Plaintiff's meloxicam and rizatriptan tablets," that "Apotex filed ANDA No. 220803 seeking approval to engage in the commercial manufacture, use, sale, offer for sale, or importation of Apotex's Proposed Product, before the patents-in-suit expire," and that, "[u]nless enjoined by this Court, upon FDA approval of Apotex's ANDA, Apotex will

infringe one or more claims of the '075 patent under 35 U.S.C. § 271(a), including at least claim 1, by making, using, offering to sell, selling, and/or importing Apotex's Proposed Product in the United States." *See* D.I. 1 at ¶¶ 87, 91, 95, 99.[3]  Axsome further pled that "Apotex will induce infringement of one or more claims of the '075 patent under 35 U.S.C. § 271(b), including at least claim 1, by making, using, offering to sell, selling, and/or importing Apotex's Proposed Product in the United States," that, "upon FDA approval of Apotex's ANDA, Apotex will intentionally encourage acts of direct infringement with knowledge of the '075 patent and knowledge that its acts are encouraging infringement," and that "Apotex knew and knows that Apotex's Proposed Product is designed for a use that infringes one or more claims of the '075 patent, and Apotex's Proposed Product lacks a substantial non-infringing use."  D.I. 1 at ¶¶ 100-01.[4]  These allegations are sufficient to plead direct and indirect infringement.  *See AlexSam*, 119 F.4th at 42, 46-47; *see also Bristol-Myers Squibb*, 2023 WL 3354261, at *3-4; *Celgene*, 2020 WL 1921700, at *3 n.4; *Rayner Surgical*, 2026 WL 905689, at *3; *Corcept Therapeutics*, 2018 WL 5263278, at *3.

### B.    The Disclosure-Dedication Doctrine Is Inapplicable Because Axsome Never Dedicated ▮▮▮▮ to the Public

Apotex's dedication argument rests on the faulty premise that Axsome allegedly deliberately left ▮▮▮▮ "unclaimed."  But Axsome did not leave ▮▮▮▮ "unclaimed" or

---

[3] *See also id.* at ¶¶ 108, 117, 126, 135, 144, 153, 189, 198, 207, 216, 225, 234, 243, 252, 261, 270, 288, 297, 306, 315, 324, 333, 342, 351, 360, 369, 378, 387, 396, 405, 414, 423, 432, 441, 450, 459, 468, 477, 495, 504, 513, 522, 531, 540, 549, 558, 585, 612, 648, 657, 675, 711, 720, 729, 756.

[4] *See also id.* at ¶¶ 109-10, 118-19, 127-28, 136-37, 145-46, 154-55, 190-91, 199-200, 208-09, 217-18, 226-27, 235-36, 244-45, 253-54, 262-63, 271-72, 289-90, 298-99, 307-08, 316-17, 325-26, 334-35, 343-44, 352-53, 361-62, 370-71, 379-80, 388-89, 397-98, 406-07, 415-16, 424-25, 433-34, 442-43, 451-52, 460-61, 469-70, 478-79, 496-97, 505-06, 514-15, 523-24, 532-33, 541-42, 550-51, 559-60, 586-87, 613-14, 649-50, 658-59, 676-77, 712-13, 721-22, 730-31, 757-58.

"decline to claim" ▮▮▮▮▮▮  To the contrary, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Accordingly, the disclosure-dedication doctrine does not apply, and Apotex's motion should be denied.

### 1.    Claiming the Alleged Equivalent Defeats the Disclosure-Dedication Doctrine

A preliminary question in assessing potential application of the disclosure-dedication doctrine is whether the patentee filed claims covering the alleged equivalent during prosecution. If, on the one hand, the prosecution history demonstrates that the patentee sought to claim the alleged equivalent, then the disclosure-dedication doctrine does not apply. If, on the other hand, the prosecution history demonstrates that a patentee never attempted to claim the alleged equivalent, then the disclosure-dedication doctrine may limit the patentee's ability to pursue infringement via the doctrine of equivalents.

*Graver II* demonstrates the first scenario: the Supreme Court did not apply the disclosure-dedication doctrine to preclude application of the doctrine of equivalents where the patentee had previously attempted to claim the alleged equivalent. 339 U.S. 605 at 612. The claims in that case recited "alkaline earth metal silicate," while the alleged equivalent compositions contained "manganese silicate," which is not an alkaline earth metal silicate. "[T]hat manganese is a proper substitute" for an alkaline earth metal was "fully disclosed in the specification." *Id.* at 610, 613. Critically, though, the patentee had previously attempted to claim both "silicates" and "metallic silicates," both of which encompassed manganese silicate. *Id.* These claims were held invalid, however, in *Graver I. See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 336 U.S.

271, 276-77 (1949) [*Graver I*].  The dissenting opinions in *Graver II* took the position that the disclosure-dedication should foreclose application of the doctrine of equivalent because "[w]hat is not specifically claimed is dedicated to the public," and there was no valid claim in the patent-in-suit covering the alleged equivalent.  *Graver II*,  339 U.S.  at 614 (Black, J., dissenting); *see also id.* at 618 (Douglas, J., dissenting) (stating that subject matter "disclosed in the application and then excluded from the claims . . . [becomes] public property").  Despite the dissents and specification's disclosure, however, *Graver II* affirmed the finding of infringement under the doctrine of equivalents.  *Id.* at 612.

*Johnson* demonstrates the second scenario: the Federal Circuit held that the disclosure-dedication doctrine barred the patentee from asserting the doctrine of equivalents "to cover the disclosed but unclaimed" equivalent.  *See Johnson*, 285 F.3d at 1055.  According to the Court, "when a patent drafter discloses but ***declines to claim subject matter***, . . . this action dedicates that unclaimed subject matter to the public."  *Id.* at 1054 (emphasis added).  The Court noted the "fundamental principle that claims define the scope of patent protection" and thus the claims "give notice of the scope of patent protection."  *Id.* at 1052.  Johnson's patent claims required "aluminum"; the alleged equivalent consisted of "steel"; the specification provided that, "[w]hile aluminum is currently the preferred material . . . , other metals, such as stainless steel or nickel alloys may be used"; and the patentee left steel "unclaimed."  *Id.* at 1055.  Accordingly, the Court found that Johnson left steel substrates "disclosed but unclaimed" and therefore held that Johnson was foreclosed from asserting the doctrine of equivalents to encompass steel.  *Id.* at 1054.

The *Johnson* court addressed its distinction from *Graver II* and *Johnson*, noting that "[t]he [*Graver II*] holding and the history of *Graver II* show that ***the patentee had not dedicated***

14

***unclaimed subject matter to the public.  In fact, the patentee had claimed the 'equivalent'***

***subject matter***, even if the Court eventually held the relevant claims too broad."  285 F.3d at

1053 (emphasis added).  In his concurrence, Justice Dyk explained that this distinction is what

"explains the consistency of [the majority's] rule [in *Johnson*] with *Graver Tank II*":

> [t]he patentee has control over the drafting of the claims, and if he discloses but omits to claim certain subject matter, he will be held to have waived the right to capture the disclosed matter under the doctrine of equivalents, and to have dedicated it to the public.  No such waiver occurs where, as in *Graver Tank II*, the patentee actually claimed the subject matter, even if the particular claims are later held invalid . . . .  *Graver Tank II* is distinguishable on its facts because ***the equivalent subject matter in that case (if disclosed) was also claimed***.

*Johnson*, 285 F.3d at 1060 (Dyk, J., concurring) (emphasis added); *see also Janssen Prods., L.P.*

*v. Lupin Ltd.*, No. 10-cv-05954 (WHW), 2014 U.S. Dist. LEXIS 155248, *68 (D.N.J. Mar. 12,

2014) ("The Federal Circuit made sure to distinguish its holding in *Johnson* from the holding in

*Graver Tank II*, relying on the significant distinction that in *Graver Tank II*, ***the patentee had***

***claimed the 'equivalent'*** subject matter, even if the Court eventually held the relevant claims too

broad." (internal quotations and citation omitted) (emphasis added)).

Later courts have applied the same distinction.  In *Janssen*, 2014 U.S. Dist. LEXIS

155248, the Court found that the disclosure-dedication doctrine did not limit Janssen's doctrine

of equivalents argument.  *Id.* at *72.  There, Janssen had "claimed the equivalent subject matter

[darunavir hydrate] in its initial patent application."  *Id.* at *69.  "[T]he patent examiner later

required Janssen to restrict its claims and to select one invention, which Janssen did by electing

to pursue only darunavir ethanolate in that particular application."  *Id.*  Accordingly, "the facts

presented [were] more similar to those of *Graver Tank II* than those of *Johnson & Johnston*"

because, "[l]ike the patentee in *Graver Tank II*, ***Janssen sought claims*** on the alleged equivalent,

15

darunavir hydrate, *in its application for the patent-in-suit*." *Id.* at \*67 (emphasis added).  The Court reiterated that "there [was] *no subject matter 'deliberately left unclaimed'* because Janssen indeed did claim darunavir hydrate in its patent application," even though the claim did not ultimately issue from the application.  *Id.* at \*70 (emphasis added).  Therefore, "Janssen did not dedicate [the alleged equivalent] to the public."  *Id.* at \*72.

Similarly, in *Rosby v. Stoughton Trailers, Inc.*, No. 95-0511, 2003 WL 22232802, at \*8 (N.D. Ill. Sept. 26, 2003), the Court found that the disclosure-dedication doctrine did not limit the patentee's doctrine of equivalents argument.  There, "the patentee tried to claim the equivalent subject matter, but an examiner at the PTO eventually held the relevant claims too broad, and thus obvious."  *Id.* at \*7.  Applying the rule that, "[t]o determine whether [*Johnson*] applies, one must determine when to apply the principle '*deliberately left unclaimed*,'" the Court decided that the patentee did not deliberately leave the alleged equivalent unclaimed.  *Id.* at \*7-8 (emphasis added).  Instead, "the patentee originally tried to obtain coverage for [the alleged equivalent]," even though the claim did not ultimately issue from the application.  *Id.* at \*8.  Therefore, the facts "seem[ed] more analogous to the situation in *Graver* [*II*] than that in *Johnson*," and the disclosure-dedication doctrine did not apply.  *Id.*

Thus, "declines to claim" as articulated in *Johnson* is the operative phrase: a patentee must have *declined* to claim the alleged equivalent as in *Johnson*.  By contrast, where the patentee affirmatively sought to claim the alleged equivalent during prosecution, like here, the ultimate fate of those claims—whether held invalid, rejected on the merits, or otherwise—is irrelevant because *Graver II* applies.

**2.**  ████████████████████████████████████

The present facts fall squarely within the rule of *Graver II* as followed by *Janssen* and *Rosby*.  Here, like the prevailing patentees in *Graver II*, *Janssen*, and *Rosby*, Axsome applied for



*See, e.g.*, *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims.").  Moreover, Axsome later pursued and obtained claims that were directed to cyclodextrins generally, ████████████████████████████████████ *See, e.g.*, '839 patent, cl. 2 (reciting "[t]he method of claim 1, wherein the solid dosage form further comprises a cyclodextrin"); '117 patent, cl. 9 (reciting "[t]he method of claim 1, wherein the meloxicam is complexed with a cyclodextrin").

The facts in this case are very similar to the facts encountered by Judge Walls in *Janssen*. There, as here, the patentee applied for claims in the patent-in-suit encompassing the alleged equivalent.  2014 U.S. Dist. LEXIS 155248, at *61; *see* Ex. 2, cl. 2.  There, as here, the examiner issued a restriction requirement, and the patentee did not elect the alleged equivalent, which was therefore withdrawn from the literal scope of the claims.  *Janssen*, 2014 U.S. Dist. LEXIS 155248, at *61, 63; Ex. 3 at 7; Ex. 4.  And there, as here, the movant argued that the disclosure-dedication doctrine should apply because the alleged equivalent "was disclosed but not claimed." *Janssen*, 2014 U.S. Dist. LEXIS 155248, at *55.  Judge Walls rejected the movant's argument because, "[l]ike the patentee in *Graver Tank II*, Janssen sought claims on the alleged equivalent . . . in its application for the patent-in-suit," and therefore "Janssen claimed the

17

equivalent subject matter in its initial patent application." *Id.* at \*67, 69.  Apotex's motion should be denied for the same reasons.

Apotex's reliance on *Eagle* is inapposite for the same reason as *Johnson*: the patentee never claimed the alleged equivalent.  Eagle claimed "a pharmaceutically acceptable fluid comprising a mixture of polyethylene glycol" ("PG") and asserted that Slayback's product containing "ethanol" infringed because ethanol was the equivalent of PG in the claimed composition.  *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1173-74 (Fed. Cir. 2020).  Slayback retorted that ethanol was dedicated to the public.  The Court agreed with Slayback because Eagle had never claimed ethanol: "the asserted patents dedicated ethanol to the public by disclosing, ***but not claiming***, ethanol as an alternative to PG in the 'pharmaceutically acceptable solvent' claim limitation."  *Id.* at 1177 (emphasis added).  Because Eagle never claimed ethanol, the case fell within the rule of *Johnson*, not *Graver II*, making the case irrelevant to the present case.[5]

In sum, Axsome did not "decline to claim" ███████████████████████████ ███████  Because Axsome ██████████████████████████████████, this case is more analogous to *Graver II* than *Johnson*, and the disclosure-dedication doctrine does not apply



---

[5] Apotex's two out-of-district cases, one of which is unpublished, do not alter the outcome here. *See* Apotex Br. at 14-15 (citing *In re Bendamustine Consol. Cases*, No. 13-2046, 2015 WL 1951399 (D. Del. Apr. 29, 2015), and *MorphoSys AG v. Janssen Biotech, Inc.*, 358 F. Supp. 3d 354 (D. Del. 2019)).  While the Court rejected the patentee's reliance on *Janssen* and *Rosby* in *Bendamustine*, it did so because the patentee suggested its "intent" was relevant.  *See Bendamustine*, 2015 WL 1951399, at \*3.  The Court did not address the facts presented here, i.e., ████████████████████████████████████  In *MorphoSys*, the disputed issue centered on whether the alleged equivalent was sufficiently disclosed in the specification, not whether the alleged equivalent had been claimed during prosecution.  *MorphoSys*, 358 F. Supp. 3d 354.

to limit Axsome's doctrine of equivalents argument.[6]  Accordingly, Apotex's motion should be denied.

### 3. In the Alternative, the *Johnson* Rule Is Irreconcilable with Supreme Court Precedent and Should Not Bar Axsome's Doctrine of Equivalents Claims

To the extent the Court understands *Johnson* to adopt a categorical rule—that any subject matter disclosed but not claimed in a patent is automatically dedicated to the public, even if claimed in a later continuation patent, *see* 285 F.3d at 1085—such an interpretation cannot be squared with controlling Supreme Court authority and, for this additional, independent reason, should not bar Axsome's doctrine of equivalents claims.  The Supreme Court has twice held that the doctrine of equivalents must be evaluated "against the context of the patent, the prior art, and the particular circumstances of the case."  *Graver II*, 339 U.S. at 609; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997).  Applying Johnson as a *per se* rule would be the antithesis of this case-specific inquiry, and it certainly should not permit a finding of categorical forfeiture in the face of objective evidence that directly rebuts any inference of dedication.

Such objective evidence includes, as here, the patentee having claimed the alleged equivalent in a later continuation or other application based on a shared disclosure.  As Judge

---

[6] The disclosure-dedication doctrine does not apply to the '075 patent ████████████████ ████████████████████  Although Apotex did not make any independent arguments regarding the remaining 55 SOBEDEX patents that followed the '075 patent, Apotex Br. at 12-15, each of the remaining patents was filed and issued ***after*** the '075 patent.  For instance, the child application of the '075 patent is the '614 patent, a continuation-in-part of the '075 patent.  Not only does it incorporate by reference the '075 patent's disclosure, '614 patent at 1:7-15, it also contains the same disclosure as the '075 patent in relevant part, *id.* at 4:57-5:29, 14:18-39; therefore, the disclosure-dedication doctrine does not apply for the same reasons it does not apply for the '075 patent.  Each of the remaining SOBEDEX patents relate to the '614 patent, and, thus, the disclosure-dedication doctrine equally does not apply.

Newman noted in the *Johnson* dissent: claiming subject matter in a continuing application "rebuts any inference that the disclosed but unclaimed subject matter was abandoned." 285 F.3d at 1067 (Newman, J., dissenting) (citing *In re Gibbs*, 437 F.2d 486, 494 (CCPA 1971)). The Federal Circuit itself has recognized as much, even post-*Johnson*. For example, in the 2019 *Eli Lilly* case, the Court explained: "[u]nder the disclosure-dedication rule, subject matter disclosed by a patentee, but not claimed, is considered dedicated to the public . . . . The reason for the doctrine is that members of the public reading a disclosure of particular subject matter are entitled, absent a claim to it, to assume that it is not patented and therefore dedicated to the public (***unless, for example, claimed in a continuation or other application based on the disclosure***)." 933 F.3d at 1334 (emphasis added). *Eli Lilly* therefore confirms that claiming an equivalent in a continuation claim— ████████████████████████████ — does not trigger the dedication rule. Accordingly, applying a categorial rule based on *Johnson* cannot be squared with Supreme Court authority, subsequent Federal Circuit authority, or the facts here. Plaintiff's doctrine of equivalents theory should proceed on the merits.

### C.    Even If the Disclosure-Dedication Doctrine Were Applicable, Judgment on the Pleadings Is Inappropriate

Apotex's motion fails for an additional independent reason: even assuming that Axsome had "declined to claim" ██████ and the disclosure-dedication doctrine may be available here, Apotex has not established that a POSA, reading the SOBEDEX patents' specifications and file histories, would have understood ██████ to be an alternative for SBEβCD in each claimed invention. The disclosure-dedication doctrine relies upon a POSA's understanding of the specification, prosecution history, and claims. *See Eli Lilly*, 933 F.3d at 1334; *Pfizer*, 429 F.3d at 1379. Where, as here, that understanding turns on "highly technical and hotly disputed" facts, underlying factual disputes preclude judgment on the pleadings. *See, e.g.*, *Amgen*, 2017 WL

20

6493150, at *2 (finding material disputes of fact regarding prosecution history estoppel precluding judgment on the pleadings, including the absence of "an understanding of which equivalents are in question and the equivalents of the listed binder excipients").  By way of one example, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████  This presents factual and expert issues that Apotex's motion does not address.[7]  Instead, because of the highly technical subject matter involved, this case needs a more developed record and expert discovery before determining what a POSA would have understood based on the SOBEDEX patent specifications and file histories with respect to the potential suitability of ██████ as an alternative to SBEβCD in the context of the claimed inventions.[8]  On this additional, independent basis, Apotex's motion should be denied.  *See Allergan*, 2024 WL 1931969, at *5; *Janssen v. EVER*, 2025 WL 639380, at *16; *Tolmar*, 2022 WL 13858026, at *2.

### D.    Apotex's Policy Argument Is Irrelevant and Has Already Been Rejected

Apotex's final argument—that the Court should require "an early and substantial narrowing of the scope of Axsome's case," Apotex Br. at 18—has no place in a Rule 12(c)

---

[7] Therefore, this case is different from *Eagle*.  The disclosure-dedication doctrine applied in *Eagle* because the specification "expressly and repeatedly identifies 'ethanol' as an alternative 'pharmaceutically acceptable fluid' to PG," listing eight separate occasions in the specification where "ethanol" was described as a "pharmaceutically acceptable fluid" along with PG, such as "[p]referred pharmaceutically acceptable fluids include PG, PEG or ethanol in this embodiment of the invention."  958 F.3d at 1174.  Apotex has pointed to no such "express[] and repeated[]" disclosure here.

[8] As mentioned *supra*, Apotex did not make any independent arguments regarding the remaining 55 SOBEDEX patents.  Its only arguments relate to the '075 patent.  *See* Apotex Br. at 12-15.

motion.  Apotex cites no authority suggesting otherwise.  After all, it is not relevant.  "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."  *Allergan*, 2024 WL 1931969, at \*2.  Where, as here, material facts are disputed and the movant is not entitled to judgment, Rule 12(c) relief is unavailable.  The size and scope of the case is not a cognizable basis for judgment on the pleadings.

Apotex's motion also constitutes an improper attempt to get a second bite of the apple.  It already prematurely raised early claim narrowing in the Joint Proposed Discovery Plan, filed March 23, 2026, and addressed this topic during the March 26, 2026 scheduling conference with the Court.  *See* D.I. 42 at 8-12.  In the conference, the Court agreed with Axsome that narrowing the case at this stage is unprecedented in this Judicial District.  *See id.* at 6-7.[9]  The Court should decline to entertain this argument again, particularly on a motion for judgment on the pleadings where such an argument is irrelevant, and just weeks after Judge Espinosa rejected it as unprecedented and prejudicial to Axsome.

## V.   CONCLUSION

For the foregoing reasons, Axsome respectfully requests that the Court deny Apotex's motion for judgment on the pleadings.

---

[9] Additionally, as explained in the Joint Proposed Discovery Plan, reducing the number of claims at this time would be premature and implicates Axsome's due process rights.  *See* D.I. 42 at 7.  Moreover, Apotex's complaint that Axsome has too many patents ignores the fact that this Hatch-Waxman case exists solely because Apotex *chose* to challenge Axsome's patents.  *See id.* at 5, 7.  Reducing the number of claims that Axsome may assert would be prejudicial, because Axsome does not yet know Apotex's positions, including those it intends to take in its contentions, during fact discovery, in *Markman*, and in expert discovery.  As is customary in Hatch-Waxman cases, the issues will narrow organically over time and in advance of any trial.

Dated: April 22, 2026

*Of Counsel:*

F. Dominic Cerrito
Eric C. Stops
Catherine T. Mattes
Marta A. Godecki
Lourania M. Oliver
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000

Respectfully submitted

By: s/ Charles M. Lizza

Charles M. Lizza
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza, Suite 1520
Newark, New Jersey 07102-5426
(973) 286-6700
clizza@saul.com

*Attorneys for Plaintiff*
*Axsome Therapeutics, Inc.*

23